**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRUCE PICKENS, Individually and On Behalf of All Others Similarly Situated, | ) | CLASS ACTION COMPLAINT |
| | ) | |
| | ) | CASE NO. 1:20-cv-3470 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | Amount Claimed $200,000,000.00 |
| | ) | plus court costs and attorney's fees. |
| | ) | |
| DAIMLER AG, MERCEDES-BENZ, MERCEDES-BENZ, USA, LLC, SAINT-GOBAIN SEKURIT, AND NAPLETON AUTOWERKS OF INDIANA, INC. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| | ) | |
| Defendants. | | |

**AMENDED COMPLAINT**

NOW COMES, the Plaintiff, Bruce Pickens, ("Plaintiff" or "Mr. Pickens"), on behalf of himself and all others similarly situated by and through his attorneys Washington Law Offices, P.C., brings this Class action case against Defendants Mercedes-Benz USA, LLC ("Mercedes-Benz"), Daimler AG, Saint-Gobain Sekurit ("Saint-Gobain" or "Sekurit"), Napleton Autowerks of Indiana, Inc ("Napleton Autowerks") and files this Amended Complaint and states as follows:

**INTRODUCTION**

1. Mercedes-Benz is one of the largest vehicle manufacturers in the world, with more than 2.310 million sold in 2018.

2. In the United States, 315,959 Mercedes-Benz vehicles were sold in 2018.

3. Mercedes-Benz specializes in providing a luxurious, high-performance line of vehicles including sedans, SUVs, coupes, roadsters, convertibles, and more, including sales of the Smart car brand.

4. Mercedes-Benz is a German global automobile marque and a division of Daimler AG. Mercedes-Benz is known for luxury vehicles, vans, trucks, buses, coaches, and ambulances. The headquarters is in Stuttgart, Baden-Württemberg. The name first appeared in 1926 under Daimler-Benz. In 2018, Mercedes-Benz was the largest seller of premium vehicles in the world, having sold 2.31 million passenger cars.

5. Mercedes-Benz sells millions of vehicles every year, which accounts for billions of dollars in revenue. In 2019, Mercedes-Benz contributed to Daimler which took in approximately $193.474 billion in total revenue. This represents Daimler sales for twelve months ending December 31, 2019.

6. Since its founding in 1926, Mercedes-Benz has been at the forefront of the premium vehicle market.

7. This is a Class action lawsuit against Mercedes-Benz USA, LLC, Daimler AG, Saint-Gobain Sekurit, Napleton Autowerks of Indiana, Inc. for misrepresenting the safety of its vehicles.

8.    Plaintiff alleges that during the Class Period, Mercedes-Benz engaged in the practice of misrepresenting the safety of the vehicles. As a result of this practice Mercedes-Benz vehicles have harmed vehicle owners and passengers.

9.    Plaintiff is among the millions of consumers who purchased one or more of Mercedes-Benz vehicles during the ten years preceding the filing of this Complaint. Plaintiff and other similarly situated purchasers of the vehicles relied on Mercedes-Benz's misrepresentations in purchasing the vehicles, and would not have purchased the vehicles, had facts regarding the true safety of the vehicles were disclosed.

10.   Plaintiff brings this Class action on behalf of himself and all similarly situated consumers in the United States who purchased Mercedes-Benz vehicles during the Class Period for personal use (the "Class"). Plaintiff seeks damages, restitution, and injunctive relief for the Class for Mercedes-Benz's false and misleading marketing and sale of vehicles. Plaintiff and the Class seek reasonable attorneys' fees as this lawsuit seeks enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

11.   Defendants failed to adequately warn against the negative effects and risks associated with Mercedes-Benz's vehicles. Defendants failed to provide any warnings regarding the potential shattering of the sunroof.

12.   Defendants omitted, concealed, and inadequately provided critical safety information regarding the use of Mercedes-Benz in order to induce its purchase and use. Defendants engaged in and continued to engage in conduct likely to mislead consumers including Plaintiff. The conduct was fraudulent, unfair, and unlawful.

13. Defendants knew or should have known about the shattering of Mercedes-Benz's sunroof. Plaintiff contacted Mercedes-Benz's headquarters after the explosion of his sunroof. Mercedes-Benz received other complaints concerning the unexpected and sudden explosion of its sunroof prior to Plaintiff's sunroof exploding.

14. Despite clear knowledge that Mercedes-Benz's sunroof had a significant chance of shattering unexpectedly, Defendants continued to market and sell Mercedes-Benz without warning consumers or healthcare providers of the significant risks of unexpected sunroof explosion.

## NATURE OF THE ACTION

15. This is an Illinois statewide Class action for Breach of Express and Implied Warranty, Unfair Business Practices, Misrepresentation, Unjust Enrichment, Fraudulent Misrepresentation, Emotional Distress, Fraud and Negligence arising out of Defendants' manufacture, design, distribution and sale of Mercedes-Benz branded automobiles with defective sunroofs. As alleged herein, the Mercedes-Benz branded vehicles were defective in that the large moon or sunroofs, often referred to as panorama roofs (collectively "sunroofs") were prone to spontaneous exploding, shattering, and/or cracking.

16. As more fully alleged herein, Plaintiff purchased a pre-owned certified 2015 Mercedes-Benz, with a sunroof manufactured by Mercedes-Benz and Saint-Gobain Sekurit. The sunroof was defective, and on March 3, 2020, while Plaintiff was driving, the sunroof spontaneously shattered, spraying glass throughout the car and onto Plaintiff. The

incident involving Plaintiff was the product of a common and known defect in the sunroof installed in Mercedes-Benz vehicles.

17.   Plaintiff seeks for himself and the Class compensatory damages, punitive damages, recall of Mercedes-Benz vehicles, and restitution disgorgement. Plaintiff seeks to represent the following Classes in this matter:

     a.   **Class 1:** All Illinois residents who purchased or leased a Mercedes-Benz vehicle in Illinois and who have incurred actual expenses in connection with either the diagnosis or repair of the vehicle's sunroof.

     b.   **Class 2**: All Illinois residents who currently own or lease a Mercedes-Benz vehicle in Illinois and who have not had the sunroof fully repaired.

     **c.   Class 3:** All persons in the United States of America who purchased one or more of Defendants' vehicles anytime between 2010 and the present.

18.   This is a Complaint for breach of contract, violation of the Illinois Deceptive Business Practices Act, § 815 ILCS 505/2, and fraud in connection with the sale and lease of Mercedes-Benz vehicles.

19.   A product is defective when it fails to perform in the manner reasonably expected in light of its nature and intended function. A product is not unreasonably dangerous if the injury derives merely from the inherent properties of the product that are obvious to all. *Hunt v. Blasius*, 74 Ill. 2d 203 (1968); See also *Haudrich v. Howmedia, Inc*., 169 Ill. 2d 525, 541 (1996).

20.   The implied warranty of merchantability is articulated within the Uniform Commercial Code, 810 ILCS 5/2-314. For goods to be merchantable, they must: (1) pass without

objection in the trade under the contract description; (2) in the case of tangible goods, be of fair average quality within the description; (3) be fit for the ordinary purposes for which such goods are used; (4) run, within the variations permitted by agreement, of even kind, quality, and quantity; (5) be adequately contained, packaged, and labeled as required by agreement; and (6) conform to the promises of fact made on the container or label, if any.

## THE PARTIES

21. Plaintiff is a citizen of Illinois, who resides in Glenwood, Illinois. Glenwood is in Cook County Illinois. During the Class Period, Plaintiff was the owner of a 2015 ML 350 Mercedes-Benz and purchased the vehicle from Napleton Autowerks of Indiana, Inc. in Schererville, Indiana.

22. In Plaintiff's vehicle purchase from Mercedes-Benz, he relied on Mercedes-Benz's representations of the safety of its vehicles, without knowledge of the sunroof's exploding parts. Plaintiff had misrepresented material facts regarding the quality and safety of the sunroof, that had occurred with or without the operation of the sunroof which exploded during normal driving operation.

23. Defendants, Mercedes-Benz USA, LLC at all times relevant were and are a New Jersey corporation with its operations throughout the state of Illinois.

24. Mercedes-Benz's U.S. Corporate headquarters are located in New Jersey. Mercedes-Benz is headquartered at 3 Mercedes Drive, Montvale, New Jersey 07645. Mercedes-Benz owns and operates certified Mercedes-Benz dealership in the United States and

abroad, and is responsible for the manufacture, distribution, and marketing of its Mercedes-Benz vehicles throughout the United States and abroad.

25. Defendants, Saint-Gobain Sekuit ("Saint-Gobain" or "Defendants") at all times relevant were and are an international corporation with its operations in Sterling, Michigan.

26. Saint-Gobain Sekuit's Corporate headquarters is located in Courbevoie, France.

27. Saint-Gobain Sekuit has been the leader of automotive glazing for more than 80 years according to their website.

28. According to Saint-Gobain Sekuit's website "We strive to invent a way to reduce all inherent interior and exterior noises or vibrations and make your drive as effortless and pleasant as possible." "Winter, summer, whenever and wherever you drive, you won't have to think about the temperature inside your car again."

29. Defendants, Napleton Autowerks of Indiana, Inc. ("Napleton" or "Defendants") at all times relevant were a domestic corporation with its operations in Schererville, Indiana.

## JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. section 1332(d)(2)(A) because this case is a Class action where the aggregate claims of all members of the proposed Class are in excess of $200,000,000.00, exclusive of interest and costs, and Plaintiff(s), together with most members of the proposed Class are citizens of states different from Defendants. Additionally, this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367.

31. This Court is the proper venue for this action pursuant to 28 U.S.C. Section 1391 because a substantial part of the events, acts, and omissions giving rise to the claims herein occurred

in this District. Plaintiff resides in this District, and the incident occurred in this district. Additionally, Mercedes-Benz advertised, sold, and distributed its Mercedes-Benz, which are the subject matter of this lawsuit, in this District.

32. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship because the parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

33. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) because the Defendants conduct business to meet the minimal contact requirements in this district and pursuant to 28 U.S.C. § 1391(a)(2), a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## **GENERAL ALLEGATIONS**

34. Plaintiff Bruce Pickens is the owner of a 2015 ML 350 Mercedes-Benz and purchased the vehicle from Napleton Autowerks of Indiana, Inc. in Schererville, Indiana.

35. On March 3, 2020, Plaintiff's sister Jawanna Tallie ("Ms. Tallie") was driving his Mercedes-Benz 350 ("vehicle") vehicle.

36. At approximately 9:15 a.m. while driving on U.S. Interstate 94 in Illinois at approximately 55 mph, Plaintiff's sunroof exploded unexpectedly.

37. The weather condition was clear, and the sun was shining.

38. The temperature was approximately 35 to 40 degrees, and Ms. Tallie had the heat inside the vehicle on low.

39. As Ms. Tallie was driving, she heard a big boom as loud as a gunshot. Hearing this unexpected sound, she looked into her mirrors but did not see any other vehicles in close

proximately that could have struck the vehicle. Ms. Tallie proceeded to pull over to inspect for damage to the vehicle's exterior.

40. Upon inspecting the vehicle and not spot any exterior damage. Ms. Tallie re-entered the vehicle and closed the door. Glass from the sunroof began to fall onto Ms. Tallie. The sunroof caved in.

41. Many of Defendants' Mercedes-Benz branded automobiles are sold with large sun or moon roofs, often referred to as panorama roofs (collectively referred to herein as "sunroofs"). Defendants' sunroofs, because of their large size, span a large portion of the roof of the vehicle and pose unique engineering challenges. They require precise strengthening, attachment, and stabilization of the glass. Several manufactures have failed to meet these demands, and at least three manufacturers have issued safety recalls because of their large and/or panoramic sunroofs.

42. The larger sunroofs on Mercedes-Benz vehicles are substantially similar in design and manufacture. Defendants' automobiles sold in Illinois under the Mercedes-Benz brand with factory-installed sunroofs are referred to in this Complaint as "Mercedes-Benz vehicles."

43. Several of Mercedes-Benz's models have the same problem with their sunroofs. Multiple Mercedes-Benz drivers have complained that their sunroofs exploded, shattered, and/or cracked without warning. This is a serious safety concern, as the shattering of the sunroofs often occurs while the car is being driven, and shards of glass fall on and around the occupants. Moreover, the explosion or shattering makes a loud and startling noise, which also has the propensity to distract drivers while they are operating the vehicle.

Nonetheless, Defendants not only refused to warn drivers, but they also continued to sell and lease their vehicles without disclosing this defect to consumers.

44. Mercedes-Benz have received complaints from vehicle owners but instead of recalling the vehicle, they offer vehicle offers $250 to $500 as a "good faith" gesture in return not to pursue legal actions against the Defendants.

45. Mercedes-Benz panoramic sunroof installment or replacement is expensive and can cost the upwards of $2,000.

46. Plaintiff was quoted approximately $9,000 to replace his sunroof.

47. According to research, the unexpected shattering of Mercedes-Benz has occurred in different makes and models of Mercedes-Benz vehicles.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action individually and as a Class action on behalf of the following Class: All persons in the United States of America who purchased one or more of Defendants' vehicles at any time between 2010 and the present (the "Class").

49. Plaintiff also seeks to represent a Subclass of all Class members who purchased a Mercedes-Benz in Illinois at any time between 2010 and the present (the "Subclass").

50. Plaintiff reserves the right to redefine the Class prior to certification.

51. Excluded from the Class is any entity in which Defendants have a controlling interest, officers or directors of Mercedes-Benz, all government entities, and any justice or judicial officer presiding over this matter.

52. This action is brought and may be properly maintained as a Class action pursuant to Fed. R. Civ. P. 23.

53. This action is brought and may be properly maintained as a Class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of said provisions.

54. The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of the member of the Class are unknown to Plaintiff.

55. Plaintiff at this time can only be ascertained through appropriate discovery.

56. Additionally, the Court must direct notice in a reasonable manner to all Class members who would be bound by the proposal if giving notice is justified by the parties' showing that the Court will likely be able to approve the proposal under Rule 23(e)(2).

57. Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class members include, but are not limited to, the following:

    a. Whether Defendants' marketing, advertising, and promotion of its vehicles;

    b. Whether Defendants' conduct resulted in unjust enrichment;

    c. Whether Defendants' conduct constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 5051, et seq.;

58. Whether Defendants' conduct constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, et seq.;

59. Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the nature of such damages;

60. Whether Plaintiff and the Class are entitled to compensatory relief; and

61. Whether Plaintiff and the Class are entitled to injunctive relief.

62. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Mercedes-Benz's common course of conduct since they all relied on Mercedes-Benz's representations concerning the vehicle and purchased a Mercedes-Benz vehicle based on those representations.

63. Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained counsel, and members of his counsel are committed to vigorously prosecuting this action on behalf of the Class.

64. A Class action is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass. Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendants' liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a Class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of

the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

65. **<u>Numerosity of the Class</u>:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses are known to Plaintiff or will be known to Plaintiff through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

66. **<u>Existence of Predominance of Common Questions of Fact and Law</u>:**

Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

a. Whether sunroofs in Mercedes Benz vehicles are defective because they are prone to spontaneous explosion, shattering, and/or cracking;

b. Whether Defendants breached express warranties in connection with the refusal to provide coverage to repair sunroofs;

c. Whether Defendants breached express warranties in connection with the defective sunroofs in Mercedes-Benz vehicles is an unlawful business practice;

d. Whether Defendants' conduct in connection with their defective sunroofs I Mercedes-Benz vehicles is an unfair business practice; and

e. The nature and extent of class-wide injury and the measure of damages for the injury.

67. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes he represents because Plaintiff purchased a Mercedes-Benz vehicle with a sunroof, and the sunroof failed because of a common defect. Plaintiff and the members of the Classes he represents sustained the same or similar types of damages and losses.

68. **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Subclasses Plaintiff seeks to represent. Plaintiff has retained competent counsel and intends to prosecute this action vigorously. The interests of members of each Class will be fairly and adequately protected by Plaintiff and his counsel.

69. **Superiority and Substantial Benefit:** The Class action is superior to other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small, given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Even if each individual member could prosecute and litigate this matter, the court system would be overburden which may cause delays in litigation.

70. The Class should be certified because the prosecution of this cause of action by each member would cause inconsistent or varying adjudications.

71. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to this matter, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

## COUNT I:
## BREACH OF EXPRESS WARRANTY

72.    Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

73.    Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

74.    Defendants expressly warranted to Plaintiff and Class members, among other things, that "all-new Mercedes-Benz vehicles are protected by our New Vehicle Limited Warranty, covering defects in material or workmanship for 48-months or 50,000 miles, whichever comes first." Defendants also made other express warranties, alleging, the express warranties were part of the basis of the bargain for Plaintiff and Class members.

75.    Defendants represented and advertised that their automobiles, including sunroofs, were luxury, top-of-the-line cars, built to the highest standard, and were safe for their intended use. Among other things, Defendants advertise and represent that the safety-first features of Mercedes-Benz "set as standard that all automobiles eventually follow," and its vehicles utilize "intelligent Drive [which] is, essentially, the entire suite of groundbreaking driving safety features you'll find across our entire vehicle line."

76.    Mercedes-Benz's slogan is "The best or nothing." According to their website, "The three-pointed star doesn't just identify a Mercedes-Benz. It represents over a century of tradition, a commitment to quality, and a promise to always shine brighter than ever before."

77.    According to Mercedes-Benz's website, "Luxury through peace of mind. To deliver the best or nothing, safety must come first. It's why we devote so much time to a moment

we hope never happens, and why every Mercedes-Benz is engineered to make an accident less severe, less damaging, and even less likely."

78.    Also, according to Mercedes-Benz's "Accident Investigation" section of its website, "Just a few pieces of data can mean the difference between a collision and a close call. That is why we created the Mercedes-Benz Accident Investigation team, a special unit in Stuttgart, Germany dedicated to gathering and evaluating information that has the potential to save lives across the world. From impact speed to collision angles, the data collected at the scene informs our ongoing improvement of safety features and has led to the development of groundbreaking technology like ATTENTION ASSIST and DISTRONIC PLUS with PRE-SAFE® Brake."

79.    Mercedes-Benz and Saint-Gobain Sekurit as the manufacturer, distributor, and/or seller expressly warranted that the vehicle was safe to drive.

80.    Saint-Gobain Sekurit is the manufacturer of Mercedes-Benz's sunroof glass.

81.    According to Saint-Gobain Sekurit's website, "Saint-Gobain Sekurit has been a leading manufacturer of car glazing for over 80 years. As part of the Saint-Gobain Group, we have access to more than 300 years of experience and know-how. We provide high added-value products and services in three markets. With today's glazing technology, the car has become a living space. That is what fascinates us: we want to optimize your view. Innovations are part of our strategy and the key of our success."

82.    Further, Saint-Gobain Sekurit's website claims, "Thermally toughened safety glass is essential in numerous applications, from automotive windshields to bus shelters, from shop windows to facades. Sekurit offers five times the strength of ordinary annealed

glass, increased resistance to thermal stresses, superior fragmentation, and transparency. In automobiles, this high technology coated glass provides safety plus comfort, defogging rapidly in cold weather and reflecting infrared rays from the sun."

83. The glass manufactured by Saint-Gobain Sekurit was not fit for such a purpose because each of these express warranties was false. Mercedes-Benz was aware of the unsafety conditions of the sunroof glass installed and manufactured by Saint-Gobain Sekurit, despite their defective nature but continued to market and sell Mercedes-Benz across the globe and nation.

84. Plaintiff and the Class have been injured because they unknowingly paid for a vehicle with a defective part. Plaintiff and the Class would not have purchased or paid a premium price for the vehicle had they been made aware of the truth about the unexpected scattering of the sunroof.

85. Defendants breached the express warranty by selling Mercedes-Benz automobiles with a known defective and unsafe sunroof system, and by failing to cover Plaintiff and Class members for repair and other costs associated with the defective sunroofs in the Mercedes-Benz vehicles. As a result of Defendants' breaches, Plaintiff and the Class members have suffered damages and/or are entitled to restitution, including but not limited to, the cost of the purchase or lease of Mercedes-Benz vehicles associated with sunroof, the cost of repair, and/or the cost of inspection and/or replacement with a non-defective roof.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a.   Defendants breached material terms of promises to Plaintiff;

    b.   Actual, compensatory, and consequential damages;

    c.   In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for breach of express warranty;

    d.   In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

    e.   In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

    f.   For other relief, the Court deems just and proper.

## COUNT II:
## NEGLIGENT MISREPRESENTATION

86.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

87.   Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

88.   At the time of its misrepresentations, Defendants knew or should have known that these representations were false or that statements made were without Plaintiff's knowledge of their truth or veracity.

89.   Mercedes-Benz owed its customers, including Plaintiff and the Class, a duty to refrain from providing them with false and misleading information, specifically the explosion of the sunroof.

90. Mercedes-Benz breached that duty, by misrepresenting the safety of the vehicles to the Class and/or omitting material facts about the vehicle.

91. Defendants failed to communicate to Plaintiff and/or the general public that Mercedes-Benz vehicles sunroof could explode unexpectedly and could cause serious injuries during normal operation of the vehicle, failing to warn of such risks. Instead, Defendants represented in its marketing that Mercedes-Benz vehicles were safe and effective.

92. These negligent misrepresentations, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce them, and did induce them to purchase vehicles.

93. Plaintiffs bring this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

   a. Defendants, individually, and through their agents, representatives, distributors, and/or employees, negligently misrepresented material facts about Mercedes-Benz's vehicles in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

   b. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

   c. The above misrepresentations were made to Plaintiff as well as the general public;

   d. Mercedes-Benz and Saint-Gobain Sekurit pride themselves on providing safe vehicles. This claim is found through their websites. Plaintiff relied on this negligent misrepresentation.

e. Consequently, Defendants' negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

a. Defendants breached material terms of promises to Plaintiff;

b. Actual, compensatory, and consequential damages;

c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for negligent misrepresentation;

d. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

f. For other relief, the Court deems just and proper.

## COUNT III:
## BREACH OF REPRESENTATIONS, WARRANTIES, AND COVENANTS

94. Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

95. Based on the failure of the sunroof as described above, Mercedes-Benz breached the implied warranty of merchantability.

96. As a result of Mercedes-Benz's breach of implied warranty of merchantability, Plaintiff has been damaged.

97. Defendants impliedly represented to Plaintiff that the sunroof was safe prior to Plaintiff's purchasing the vehicle.

98. Defendants knew or should have to know that their statements or actions were false or were made with reckless disregard for their truth or falsity and/or that their concealment of certain fact was material to Plaintiff.

99. Defendants intended for Plaintiff to rely on the false statements of material fact and/or concealment of material facts.

100. To the extent Defendants' conduct was willful, wanton, and in utter disregard of the rights and interests of Plaintiff. The Plaintiff is entitled to an award of punitive damages to deter the Defendants from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

g. Defendants breached material terms of promises to Plaintiff;

h. Actual, compensatory, and consequential damages;

i. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for breach of representation, warranties and covenants;

j. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

k. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

l. For other relief, the Court deems just and proper.

21

## COUNT IV:
## EXPRESS WARRANTY

101.  Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

102.  Defendants are merchants and/or sellers of Mercedes-Benz. Defendants sold their vehicles to consumers, including Plaintiff, for the ordinary purpose such vehicles may be used by consumers.

103.  Defendants made representations to Plaintiff about the quality or characteristics of their vehicles by affirmation of fact, promise, and/or description. The representations by Defendants became part of the basis of the bargain between Defendants and Plaintiff.

104.  Mercedes-Benz did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed.

105.  Defendants knew or should have to know that their statements and or actions were false or were made with reckless disregard for their truth or falsity and/or that their concealment of certain fact was material to Plaintiff.

106.  Defendants intended for Plaintiff to rely on the false statements and or actions of material fact and/or concealment of material facts.

107.  A product is defective when it fails to perform in the manner reasonably expected in light of its nature and intended function. A product is not unreasonably dangerous if the injury derives merely from the inherent properties of the product that are obvious to all. Hunt v. Blasius, 74 Ill. 2d 203 (1968); See also *Haudrich v. Howmedia*, Inc., 169 Ill. 2d 525, 541 (1996). Typically, product liability cases are related to an alleged

manufacturing/fabrication defect or a design defect. Defendants had knowledge of the defect and therefore a duty to care.

108.   To the extent Defendants' conduct was willful, wanton, and in utter disregard of the rights and interests of Plaintiff, Plaintiff is entitled to an award of punitive damages to deter the Defendants from engaging in similar conduct in the future.

109.   This breach of duty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiff.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

      a.   Defendants breached material terms of promises to Plaintiff;

      b.   Actual, compensatory, and consequential damages;

      c.   In favor of Plaintiff and against Mercedes-Benz for compensatory damages for express warranty;

      d.   In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

      e.   For other relief, the Court deems just and proper.

## COUNT V:
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

110.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

111. Based on the failure of the sunroof to properly function in a safety matter, Mercedes-Benz breached the implied warranty that the vehicle sold to Plaintiff would be fit for the particular use.

112. Plaintiff justifiably and actually relied on the aforementioned false representations and purchased a Mercedes-Benz vehicle from Napleton Motorwerks.

113. As a result of Mercedes-Benz's breach of the implied warranty of fitness for a particular purpose, Plaintiff has been damaged and will in the future pay for the replacement of the sunroof.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a. Defendants breached material terms of promises to Plaintiff;

    b. Actual, compensatory, and consequential damages for breach of promises.

    c. In favor of Plaintiff and against Mercedes-Benz for compensatory damages for breach of implied warranty of fitness for a particular purpose;

    d. In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

    e. For other relief, the Court deems just and proper.

## COUNT VI:
## BREACH OF IMPLIED WARRANTY
### (By Plaintiff and all Class members against all Defendants)

114. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

115. During the Class Period, Mercedes-Benz designed and manufactured the vehicle was for sale in the stream of commerce which Mercedes-Benz knew to be defective.

116. Despite knowledge of the defect, Mercedes-Benz continued to place the defective vehicles in the stream of commerce.

117. During the Class Period, Mercedes-Benz knew that potential consumers, including Plaintiff, were buying the Mercedes-Benz for the purpose of safe and reliable transportation.

118. In sell of the vehicles to Plaintiff and Class members with the knowledge that the machines were defective, Mercedes-Benz warranted the vehicles were safe.

119. The subject failure and shattering of Mercedes-Benz's sunroof during the Class Period has been well documented in the media and on the Internet; this sunroof is known to spontaneously explode.

120. An Internet search for the terms "Mercedes-Benz roof shattering" provides a myriad of results relating the sunroof's inability to perform as expected under normal conditions.

121.  A cursory Internet search result shows that the makers of Mercedes-Benz had factual evidence of the potential for serious injury or death and provided no solution, recall, or warning to the buyers and leasers of the vehicle. Instead Mercedes-Benz remained steadfast in advising dealers that the cost would not be covered under warranty or other means, leaving the repair and costs, and any economic loss to the consumers.

122. Prior to Plaintiff's sunroof exploding, Mercedes-Benz' headquarters were contacted concerning another Mercedes Benz vehicle's sunroof unexpectedly exploded. Mercedes-Benz's executive stated that they never received a complaint concerning sunroof explosion.

123. Mercedes-Benz failed to recall their vehicles and/or advise potential consumers that the device may not operate as intended or expected.

124. The failure of Mercedes-Benz vehicles to operate as intended constitutes a breach of the implied warranty of merchantability.

125. Mercedes-Benz continues to conceal the source of the defect, any corrective measures to ensure public safety, and as such hold vital information relating to the multitude of complaints made by the consumers.

126. Defendants were at all times the manufacturer, distributor, warrantor, or seller of the Mercedes-Benz vehicle at issue in this action. Defendants knew or should have known of the use for which the Mercedes-Benz vehicles were purchased. However, the Mercedes-Benz vehicles were not fit for the ordinary purpose of providing reasonably safe transportation because the sunroofs were defective and prone to spontaneous explosion, shattering, and/or cracking. This was an inherent defect at the time of sale or leasing of the Mercedes-Benz vehicles.

127. Defendants impliedly warranted that the Mercedes-Benz vehicles were of merchantable quality and fit for such use. The implied warranty included, among other things; (1) a warranty that the Mercedes-Benz vehicles and the sunroof system manufactured, designed, supplied, distributed, and/or sold by Defendants were safe, reliable, and/or durable for providing transportation; and (2) a warranty that the Mercedes-Benz vehicles and the sunroof system would be fit for consumers' intended use while the Mercedes-Benz vehicles were being operated.

128. Contrary to the applicable implied warranties, the Mercedes-Benz vehicles and the sunroof system, at the time of sale and thereafter, were not fit for ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation. Instead, the Mercedes-Benz vehicles were defective, including but not limited to, defective in the design and manufacture of the sunroof system.

129. As a result of Defendants' breaches, Plaintiff and the Class members have suffered damaged and are entitled to restitution, including but not limited to, any cost associated with sunroof, such as repair, and/or cost of inspection and/or replacement of a non-defective roof.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a. Defendants breached material terms of promises to Plaintiff;

    b. Actual, compensatory, and consequential damages;

    c. In favor of Plaintiff and against Mercedes-Benz for compensatory damages for breach of implied warranty;

    d. In favor of Plaintiff and against Mercedes-Benz for punitive damages;

    e. In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

    f. For other relief, the Court deems just and proper.

## COUNT VII:
## VIOLATION OF MAGNUSON-MOSS ACT
### (By Plaintiff and all Class members against all Defendants)

130. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

131. The Plaintiff claims that he sustained damages as a purchaser of a vehicle sold, distributed, and supplied by the Defendants.

132. The Plaintiff and other similar situated Class member had to pay out of pocket expenses to repair their sunroof.

133. The Plaintiff further claims that the Defendants violated the Magnuson-Moss Act.

134. During the Class Period, Mercedes-Benz designed and manufactured a product known as the vehicle was for sale in the stream of commerce which Mercedes-Benz knew to be defective.

135. Despite knowledge of the defect, Mercedes-Benz continued to place the defective vehicles in the stream of commerce.

136. During the Class Period, Mercedes-Benz knew that potential consumers, including Plaintiff, were buying the Mercedes-Benz for the purpose of safe and reliable transportation.

137. In the sell the vehicles to Plaintiff and Class members with the knowledge that the machines were defective, Mercedes-Benz warranted the vehicles were safe.

138. The subject failure and shattering of Mercedes-Benz vehicles during the Class Period has been well documented in the media and on the Internet; This sunroof is known to spontaneously explode.

139. An Internet search for the terms "Mercedes-Benz roof shattering" provides a myriad of results relating the sunroof's inability to perform as expected under normal conditions.

140. A cursory Internet search result shows that the makers of Mercedes-Benz had factual evidence of the potential for serious injury or death and provided no solution, recall, or

warning to the buyers and leasers of the vehicle. Instead Mercedes-Benz remained steadfast in advising dealers that the cost would not be covered under warranty or other means, leaving the repair and costs, and any economic loss to the consumers.

141. Mercedes-Benz failed to recall their vehicles and/or advise potential consumers that the device may not operate as intended or expected.

142. The failure of Mercedes-Benz vehicles to operate as intended constitutes a breach of the implied warranty of merchantability.

143. Mercedes-Benz continues to conceal the source of the defect, any corrective measures to ensure public safety, and as such hold vital information relating to the multitude of complaints made by the consumers.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

a. Defendants breached material terms of promises to Plaintiff;

b. Actual, compensatory, and consequential damages;

c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for breach of implied warranty;

d. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

f. For other relief, the Court deems just and proper.

## COUNT VIII:
## UNJUST ENRICHMENT

144. Plaintiff reasserts and incorporates the allegations of the preceding paragraphs of this Complaint as though fully alleged herein.

145. Plaintiff brings this claim individually and on behalf of the proposed Class against Defendants.

146. Mercedes-Benz, as the manufacturer, distributor, and/or seller represented that Mercedes-Benz is safe for consumers in its normal operation. However, many consumers have experienced dangerous operations when the vehicle's sunroof shatters during normal operation at high or low speed. Without offering repair of the vehicle, Mercedes-Benz unjustly enriches itself at the expense and safety of its very consumers.

147. Accordingly, Mercedes-Benz has been unjustly enriched in retaining revenues derived from Plaintiff and the Class members' purchase of Mercedes-Benz vehicles under these circumstances. Mercedes-Benz' misrepresentations caused Plaintiff and the Class harm and unjustly enriched Mercedes-Benz because Plaintiff and the Class would not have purchased Mercedes-Benz's vehicle or paid the price that they did, had the facts been known.

148. Mercedes-Benz have been unjustly enriched because owners have to pay out of pocket expenses to replace their defective sunroof. Only panoramic sunroof class manufactured by Saint-Gobain Sekurit is permitted on Mercedes-Benz's vehicles.

149. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class as a result of these misrepresentations is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class.

150. Plaintiff reasonably relied on these statements, which were intended to mislead Plaintiff.

151.  Defendants' fraudulent actions and statements were egregious and enticed Plaintiff that they reasonably induced Plaintiff to rely on their statements.

152.  Defendants had fraudulent intent and were aware that the sunroof was defective.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

a.  Defendants breached material terms of promises to Plaintiff;

b.  Actual, compensatory, and consequential damages;

c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for unjust enrichment;

d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

f.  For other relief, the Court deems just and proper.

## COUNT IX:
## FRAUDULENT INDUCEMENT

153.  Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

154.  At the time of Plaintiff purchasing the vehicle, Mercedes-Benz knew there were defects in the sunroof, and vehicle was not fit for the intended use.

155.  Mercedes-Benz intentionally failed to disclose the defects to the sunroof to Plaintiff and falsely represented that the vehicle was fit for use. Given its superior knowledge of

sunroof and its recognition of the intended use of vehicle, Defendants had a duty to disclose these defects to Plaintiff.

156. The aforementioned omission and false representations were material to Plaintiff's decision to purchase a Mercedes-Benz vehicle. Plaintiff would not have purchased a Mercedes-Benz vehicle had he known of the defects in the vehicle or that the vehicle was not fit for use.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

      a.  Defendants breached material terms of promises to Plaintiff;

      b.  Actual, compensatory, and consequential damages;

      c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for fraudulent inducement;

      d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

      e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

      f.  For other relief, the Court deems just and proper.

## COUNT X:
## BREACH OF WARRANTY

157. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

158. Under Mercedes-Benz "New Vehicle Warranty Coverage Documents" http://extendedlimitedwarranty.mercedesbenzofaustin.com/new-vehicle-warranty-

coverage-documents, Defendant, Mercedes-Benz, claims its warranty extends to consumers and "that any authorized Dealer will make repairs or replacements necessary at no charge to correct defects in material or workmanship on any vehicle parts and/or systems."

159. As a direct and proximate result of the Mercedes-Benz's breach of warranty, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a.  Defendants breached material terms of promises to Plaintiff;

    b.  Actual, compensatory, and consequential damages;

    c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for breach of warranty;

    d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

    e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

    f.  For other relief, the Court deems just and proper.

## COUNT XI:
## PROMISSORY FRAUD

160. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

161. Plaintiff reasonably relied on these statements, which were intended to mislead Plaintiff.

162. Defendants' fraudulent actions and statements were egregious and enticed Plaintiff; they reasonably induced Plaintiff to rely on their statements.

163. Defendants had fraudulent intent.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a.  Defendants breached material terms of promises to Plaintiff;

    b.  Actual, compensatory, and consequential damages;

    c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for promissory fraud;

    d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

    e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

    f.  For other relief, the Court deems just and proper.

**COUNT XII:**
**STRICT PRODUCT LIABILITY**
**(By Plaintiff and all Class members against all Defendants)**

164. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

165. Strict liability applies to the sale or lease of any product which, if defective, may be expected to cause physical harm to the consumer or user. Restatement (Second) of Torts, Section 402A, Comment (b). The purpose of strict liability is to assure that the costs of injuries resulting from defective products are borne by those who manufacture and

market such products. Suvada v. White Motor Co., 32 Ill. 2d 612 (1965) (leading case but overruled on other grounds). Hebel v. Sherman Equipment, 92 Ill. 2d 368 (1982).

166. The elements of a strict liability action are: (1) the plaintiff was injured by the product; (2) the plaintiff's injury was caused by a defective and unreasonably dangerous condition of the product; and (3) the defect existed when the product left the Defendant's hands.

167. Plaintiff would show that strict liability arises not because of the Defendant's legal relationship with the manufacturer or with others in the manufacturing marketing system, but because of its participatory connection for its personal profit with the injury-producing product and with the enterprise that created the product's consumer demand. See, Hebel, 92 Ill.2d at 379. A seller who does not create a defect, but puts the defective product into circulation, is still responsible for strict liability to an injured user. The seller may either adopt inspection procedures or influence the manufacturer to enhance the product's safety. Crowe v. Public Building Comm'n of Chicago, 74 Ill.2d 10, 13-14 (1978) (citing Restatement (Second) of Torts, Section 402A, Comment (c), at 349-50. Privity is not required in strict liability actions. Garcia v. Edgewater Hosp., 244 Ill. App. 3d 894 (1st Dist. 1993), abrogation on other grounds recognized by Caterpillar, Inc. v. Usinor Industeel, 393 F. Supp. 2d 659 (N.D. Ill. 2005). Dealerships of the Mercedes-Benz vehicles are culpable for misrepresentation and circulation of the product defect as such, may be held liable as well under strict liability.

168. Mercedes-Benz, Saint-Gobain Sekuit and Napleton Autowerks of Indiana, Inc. manufactured and/or supplied by Defendants was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of

35

such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse effects or the true potential and/or likelihood or rate of the side effects. Defendants failed to perform adequate testing; adequate testing would have shown that the panoramic glass was unsafe for Mercedes-Benz vehicles. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the vehicles.

169. Mercedes-Benz, Saint-Gobain Sekuit and Napleton Autowerks of Indiana, Inc. manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

170. As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured and/or supplied and/or distributed by Defendants, and as a direct and legal result of the conduct of Defendants described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a. Defendants breached material terms of promises to Plaintiff;

    b. Actual, compensatory, and consequential damages;

    c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. for compensatory damages for strict liability;

    d.   In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

    e.   In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

    f.   For other relief, the Court deems just and proper.

**COUNT XIII**
**STRICT PRODUCT LIABILITY**
**Pursuant to Restatement Second of Torts 402a (1965)**

**(By Plaintiff and all Class members against all Defendants)**

171.   Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

172.   Mercedes-Benz manufactured and/or supplied by Defendants was unaccompanied by proper warnings regarding all possible adverse side-effects when it left the hands of the manufactures and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design.

173.   Alternatively, Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. manufactured, and/or distributed, and/or supplied by Defendants was defective in design or formulation. When it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably and more dangerous than an ordinary consumer would expect.

174.   There existed, at all times material hereto, safer alternatives. Defendants neglected their duty to care for the safety of the public at large and consumers by ignoring the defect and as such is the proximate cause of all damages.

37

175.   Defendants did not perform adequate testing upon their vehicles. Adequate testing would have revealed that Mercedes-Benz's vehicle had an egregious defect that caused harm and damages to its consumers and potentially others.

176.   Defendants manufactured, designed, marketed, distributed, and/or sold by Defendants was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Mercedes-Benz vehicles.

177.   Defendants did not warn customers of material facts regarding the safety and efficacy of Mercedes-Benz vehicles, which facts Defendants knew or should have known.

178.   Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. manufactured and/or distributed and/or supplied by Defendants were defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

179.   As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured and/or supplied and/or distributed by Defendants, and as a direct and legal result of the conduct of Defendants described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a.   Defendants breached material terms of promises to Plaintiff;

    b.   Actual, compensatory, and consequential damages;

c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. for compensatory damages for Restatement Second of Torts 402a (1965);

d. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

f. For other relief, the Court deems just and proper.

<u>**COUNT XIV**</u>
<u>**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**</u>

180. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

181. The acts, omission, and representations of Defendants regarding the manufacturing, distribution, and marketing of Mercedes-Benz as described in the foregoing paragraphs were intentional, reckless, extreme, and outrageous. Defendants intentionally engaged in extreme and outrageous conduct when they intentionally and/or recklessly marketed Mercedes-Benz and then intentionally and/or recklessly concealed material information about Mercedes-Benz's potential serious adverse effects to Plaintiff.

182. Defendants knew that Plaintiff would suffer mental distress and anxiety upon experiencing an unexpected shattering of the panoramic sunroof. Furthermore, Defendants knew that catastrophic event could cause or possess a likelihood of serious adverse effects and possible life-threatening injuries.

183. As a result of Defendants' misconduct, Plaintiff sustained and will continue to sustain emotional and mental distress and anxiety.

184. Mercedes-Benz manufactured, and/or distributed, and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

185. As the proximate cause and legal result of the defective condition of Mercedes-Benz's vehicles as manufactured, and/or supplied, and/or distributed by Defendants, and as a direct and legal result of the conduct of Defendants described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

a. Defendants breached material terms of promises to Plaintiff;

b. Actual, compensatory, and consequential damages;

c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for intentional infliction of emotional distress;

d. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

f. For other relief, the Court deems just and proper.

## COUNT XV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

186. Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

187. Defendants negligently and carelessly manufactured, sold, and distributed Mercedes-Benz to Plaintiff which was defective.

188. Defendants negligently and carelessly concealed the defective nature of Mercedes-Benz from Plaintiff.

189. Defendants negligently and carelessly misrepresented the usefulness, quality, and safety of Mercedes-Benz to Plaintiff,

190. Defendants' negligence and care carelessness directly impacted Plaintiff in that Plaintiff was induced to purchase the defective and dangerous Mercedes-Benz vehicles.

191. As a direct result of Defendants' misconduct alleged herein, Plaintiff has suffered and will continue to suffer emotional and mental distress and anxiety from the fear of knowing there is a likelihood of serious adverse effects and complications of Mercedes-Benz vehicles.

192. Mercedes-Benz manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

193. As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured, and/or supplied, and/or distributed by Defendants, and as a direct and legal result of the conduct of Defendants described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against

Defendants after a jury trial provides:

     a.  Defendants breached material terms of promises to Plaintiff;

     b.  Actual, compensatory, and consequential damages;

     c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz and Saint-Gobain Sekurit for compensatory damages for negligent intentional infliction of emotional distress;

     d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

     e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz and Saint-Gobain Sekurit for attorney's fees and costs; and

     f.  For other relief, the Court deems just and proper.

### COUNT XVI
### NEGLIGENCE
### (By Plaintiff and all Class members against all Defendants)

194.  Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

195.  Defendants owed Plaintiff legal duties in connection with its development, manufacture, and distribution of Mercedes-Benz vehicles. Defendants breached those duties, proximately causing Plaintiff's injuries. Specifically, Defendants failed to meet their duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Mercedes-Benz. Defendants are liable for

acts and/or omissions amounting to negligence, gross negligence, and/or malice including, but not limited the following:

    a.   Failure to adequately warn Plaintiff of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by using Mercedes-Benz vehicles;

    b.   Failure to use reasonable care in testing and inspecting Mercedes-Benz to ascertain whether or not it was safe for which the vehicle was designed, manufactured and sold;

    c.   Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Mercedes-Benz;

    d.   Failure to use reasonable care in the process of manufacturing Mercedes-Benz in a reasonably safe condition for the use for which it was intended;

    e.   Failure to use reasonable care in the manner and method of warning Plaintiff as to the danger and risks of using Mercedes-Benz; and

    f.   Such further acts and/or omissions that may be proven at trial.

196. The above-described acts/or omissions of Defendants were a direct and proximate cause of defects occurring on the vehicle during normal use and while not in use.

197. As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured, and/or supplied, and/or distributed by Defendants, and as a direct and legal result of the conduct of Defendants described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

a. Defendants breached material terms of promises to Plaintiff;

b. Actual, compensatory, and consequential damages;

c. In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. for compensatory damages for negligence;

d. In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

e. In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit and Napleton Autowerks of Indiana, Inc. for attorney's fees and costs; and

f. For other relief, the Court deems just and proper.

## COUNT XVII
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT

198. Plaintiff re-alleges and re-asserts every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

199. According to 815 ILCS 502/2, unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, or misrepresentation, with the intent that others rely upon the concealment, suppression or omission of such material fact, in the conduct of any trade or commerce, are hereby declared unlawful. See 815 ILCS 505/2.

200. Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The Court, in its discretion,

may award actual economic damages or any other relief that the Court deems proper. See 815 ILCS 505/10a.

201. During the Class Period, Mercedes-Benz designed and manufactured luxury vehicles, which were known to be defective.

202. As a result of the defect, members of the Class have experienced malfunctions with their Mercedes-Benz vehicles' sunroof.

203. Before the time Plaintiff purchased his Mercedes-Benz vehicle, Mercedes-Benz concealed, suppressed, and/or omitted from the public that their vehicles were defective, with the intent that such suppression would cause the consumer to rely on the concealment to purchase the vehicles in the stream of commerce.

204. Before and during, Mercedes-Benz concealed, suppressed, and/or omitted from the public that their vehicles contained a defective roof glass and system, with the intent that such suppression would cause the consumer to rely on the concealment to purchase the vehicles in the stream of commerce.

205. Mercedes-Benz produces vehicles for sale in the stream of commerce.

206. Despite Mercedes-Benz's knowledge of the defect, during the Class Period, Mercedes-Benz refused to inform consumers of the defect-a material fact and/or issue a recall of their vehicles.

207. The unfair and deceptive practice of failing to disclose the defect inherent to the vehicles had an impact on public interest because the alleged acts were committed in the course of Mercedes-Benz's business and advertised to the general public. Therefore, Plaintiff

and members of the Class occupy positions of bargaining power unequal to that of Mercedes-Benz.

208. By refusing to inform Plaintiff of the defect, and any others within the Class, Mercedes-Benz continues to suppress the nature of the defect.

209. Had Plaintiff and members of the Class been informed of the defect inherent to the Mercedes-Benz consoles, neither Plaintiff nor members of the Class would have purchased their Mercedes-Benz vehicles.

210. As a result of Mercedes-Benz's unfair or deceptive practice, Plaintiff and member of the Classes were damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendants after a jury trial provides:

    a.  Defendants breached material terms of promises to Plaintiff;

    b.  Actual, compensatory, and consequential damages;

    c.  In favor of Plaintiff and against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for compensatory damages for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

    d.  In favor of Plaintiff and against the Defendants for punitive damages in an amount to be determined at trial;

    e.  In favor of Plaintiff against Daimler AG, Mercedes-Benz, Saint-Gobain Sekurit for attorney's fees and costs; and

    f.  For other relief, the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully demands a jury trial on all issues so triable herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a. For an Order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil procedure and naming Bruce Pickens as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class and Subclass;

b. For an Order declaring that Defendants' conduct violates the statutes referenced herein;

c. For an Order declaring that Defendants' conduct violates the common law provisions referenced herein;

d. For an Order finding in favor of Plaintiff, the Class and the Subclass on all counts alleged herein;

e. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f. For pre-judgment interest on all amounts awarded to the full extent allowed by law;

g. For injunctive relief as pleaded or as the Court may deem proper;

h. For an Order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses to the full extent allowed by law; and

i.   For other relief, the Court deems just and proper.

Respectfully Submitted,

/s/Maudia Washington
Washington Law Offices, P.C
Bar No.  6319403
Attorney for PLAINTIFF
40 Dupage Court
Suite 106
Elgin, IL 60120
maudia@ilwashingtonlaw.com
Telephone: 888.586.4441