**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

BRUCE PICKENS, Individually and on Behalf of All Others
Similarly Situated,

        *Plaintiff*,

    v.

DAIMLER AG; et al.,

        *Defendants*.

Case No.   1:20-cv-3470

## SAINT-GOBAIN GLASS CORPORATION'S MOTION TO DISMISS

SAINT-GOBAIN GLASS CORPORATION, by its undersigned counsel, for its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), (b)(4) and (b)(5), states as follows:

## INTRODUCTION

"Saint-Gobain Sekurit" must be dismissed for insufficient process, because "Saint-Gobain Sekurit" is a trade name and not an actual company. "Saint-Gobain Sekurit" must also be dismissed for insufficient service of process because, to the extent the Plaintiff intended to sue a company in France, the Plaintiff failed to effect service pursuant to the Hague Convention, and Saint-Gobain Glass Corporation is not an agent for service of process for any Saint-Gobain entity in France.

Further, "Saint-Gobain Sekurit" must be dismissed for lack of personal jurisdiction. The Plaintiff alleges he purchased a 2015 ML 350 with a "panoramic" sunroof, but no Saint-Gobain entities manufactured the panoramic sunroof glass for that model and year.  While Saint-Gobain entities did manufacture glass for alternate sunroof options for that model and year, those entities do not have sufficient minimum contacts with Illinois because they did not purposefully direct their actions towards Illinois. Rather, those entities manufactured the glass abroad and delivered it to intermediaries outside of Illinois.  Accordingly, "Saint-Gobain Sekurit" must be dismissed.

## FACTUAL BACKGROUND

The Plaintiff asserts 17 causes of action sounding in contract, fraud, and tort arising out of the Plaintiff's claim that the sunroof of his Mercedes-Benz 2015 ML 350 was defective because the glass shattered spontaneously. (See Amended Complaint; ECF No. 10). The Plaintiff alleges that the sunroof in his vehicle was a "panoramic" sunroof. (ECF No. 10; ¶¶ 41, 168, 182).

The Plaintiff alleges that he resides in Illinois, and that he purchased the subject vehicle from a dealership in Indiana. (ECF No. 10; ¶ 21).

The Plaintiff alleges that "Saint-Gobain Sekurit" or "Saint Gobain Sekuit" manufactured the glass in the Plaintiff's sunroof. The Plaintiff alleges that "Saint-Gobain Sekuit" is "an international corporation" with its "corporate headquarters" in Courbevoie, France." (ECF No. 10; ¶¶ 25-26). Other than the location of the vehicle itself, the Plaintiff does not allege that "Saint-Gobain Sekurit" has any contacts with Illinois. (ECF No. 10).

On July 14, 2020, an individual provided a summons addressed to "Saint-Gobain Sekurit" to CT Corporation's office in Wilmington, Delaware. CT Corporation provided a copy of that summons to Saint-Gobain Glass Corporation." (See Service of Process Transmittal, attached hereto as Exhibit 1).

Attached to this motion as Exhibit 2 is the affidavit of Laurent Cohen-Scali, the VP Sales, Marketing & Projects for Saint-Gobain Sekurit France SAS. As detailed in the affidavit, "Saint-Gobain Sekurit" is not an actual company. (Ex. 2; ¶¶ 4-5). Rather, "Saint-Gobain Sekurit" is a trade name, and there are multiple distinct Saint-Gobain entities that incorporate the "Saint-Gobain Sekurit" trade name in their legal names elsewhere in the world. (Ex. 2; ¶¶ 4-5).

Saint-Gobain Sekurit France SAS is a corporation organized under the laws of France with its principal place of business in Thourotte, France. (Ex. 2; ¶ 23). Saint-Gobain Sekurit France

SAS manufactures various types of glazing for the automotive industry, but it did not manufacture the sunroof glass in the Plaintiff's vehicle. (Ex. 2; ¶¶ 6-13, 24). Saint-Gobain Sekurit France SAS does not have any offices in Illinois, and does not own, lease, or otherwise possess any real estate in the Illinois. (Ex. 2; ¶ 25). Saint-Gobain Sekurit France SAS does not have any employees in Illinois and does not have a registered agent in Illinois. (Ex. 2; ¶¶ 26-27).

Saint-Gobain Sekurit France SAS and the other Saint-Gobain Sekurit entities are subsidiaries of Compagnie de Saint-Gobain SA, which is a publicly-traded company organized under the laws of France with its principal place of business in Courbevoie, France. (Ex. 2; ¶ 3).

Saint-Gobain Glass Corporation is a Delaware Corporation with its principal place of business in Pennsylvania. (Ex. 2; ¶ 17). Saint-Gobain Glass Corp. is an indirect subsidiary of Compagnie de Saint-Gobain SA. (Ex. 2; ¶ 2). Saint-Gobain Glass Corp. does not sell or manufacture any glass. (Ex. 2; ¶ 19). Instead, Saint-Gobain Glass Corp. provides support for other Saint-Gobain manufacturing entities that are located outside of the United States. (Ex. 2; ¶ 18). Saint-Gobain Glass Corp. does not have any offices in Illinois, and does not own, lease, or otherwise possess any real estate in the Illinois. (Ex. 2; ¶ 20). Saint-Gobain Glass Corp. does not have any employees in Illinois and does not have a registered agent in Illinois. (Ex. 2; ¶¶ 21-22).

No subsidiaries of Compagnie de Saint-Gobain SA manufactured the "panoramic" sunroof glass for the 2015 ML 350. (Ex. 2; ¶ 14-16). The Vehicle Identification Number for the Plaintiff's vehicle supports the Plaintiff's admission in his complaint that the subject vehicle had a "panoramic" sunroof.  (Ex. 2; ¶ 14-16). The 2015 ML 350 had other sunroof options beyond the panoramic sunroof, and subsidiaries of Compagnie de Saint-Gobain manufactured the glass for those other options in either Mexico or China, and delivered the glass to intermediaries located outside of Illinois in either Mexico or Alabama. (Ex. 2; ¶ 6-13).

3

**ARGUMENT**

**I.**     **"Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(4) for insufficient process because "Saint-Gobain Sekurit" does not exist.**

Federal Rule of Civil Procedure 4 establishes the requirements for the content of a summons, which include *inter alia* that the summons identify the parties and be directed to the defendant. Fed. R. Civ. Proc. 4(a). A summons that fails to identify the correct defendant fails to comply with Rule 4(b). *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1399 (7th Cir. 1993) (summons that identified the wrong defendant failed to comply with Rule 4(b)'s requirements); *Chatman v. Condell Med. Ctr.*, 2002 U.S. Dist. LEXIS 14457 (N.D. Ill. April 22, 2002) (summons that did not name the defendant was improper, even if the complaint otherwise named the intended defendant); *Lee v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 33616 (N.D. Ill. Mar. 12, 2013) (summons that did not name the defendant correctly and listed the wrong address for the defendant was improper); *Shipley v. Cooney & Conway Creditors (In re C.P. Hall Co.)*, 506 B.R. 751 (N.D. Ill. 2014) (summons that did not name the individual defendants, but rather named a group of defendants, was improper).

Moreover, "where a suit is brought against an entity which is legally nonexistent, the proceedings are void *ab initio*." *Palen v. Daewoo Motor Co.*, 358 Ill.App.3d 649 (1st Dist. 2005) (affirming dismissal of complaint that named a company's trade name, as opposed the formal company name); *See Also Google, Inc. v. Cent. Mfg.,* 316 Fed.Appx. 491, 495 (7th Cir. 2008) (citing *Palen* with approval and vacating judgment entered against trade names of an individual).

As detailed above, the Plaintiff directed the summons to "Saint-Gobain Sekurit" but no such company exists, making the complaint void *ab initio*. "Saint-Gobain Sekurit" is merely a trade name. Multiple distinct companies use the "Saint-Gobain Sekurit" trade name as part of their legal corporate names, such that it is unclear to determine which company the Plaintiff intended

4

to direct the summons. Further, insofar as the Plaintiff delivered the summons to Saint-Gobain Glass Corporation, the summons is improper because the summons is not directed to that company and the complaint does not otherwise identify that company. Accordingly, the summons fails to comply with Rule 4(b).

If the summons itself is not sufficient, then "service of process necessarily fail[s] to confer personal jurisdiction over the defendants" and "there is consequently no need … to reach the sufficiency of service." *Shipley*, 506 B.R. at 757, *citing Ayres v. Jacobs & Crumplar, P.A.,* 99 F.3d 565, 569 (3rd Cir. 1996) (holding that an insufficient summons "does not confer personal jurisdiction" and thus finding it unnecessary "to consider such questions as whether service was properly made"). Accordingly, "Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(4), because no such company exists and there is insufficient process.[1]

## II.    "Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(5) for insufficient service of process because the Plaintiff failed to comply with the Hague Convention and Saint-Gobain Glass Corporation is not "Saint-Gobain Sekurit's" agent for service of process.

### A.    "Saint-Gobain Sekurit" must be dismissed because the Plaintiff failed to comply with the Hague Convention.

The Seventh Circuit "has long recognized that valid service of process is necessary in order to assert personal jurisdiction over a defendant." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). "Actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Id.* (stating that neither actual notice nor substantial compliance is sufficient to create valid service of process). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over

---

[1] "Faced with a motion under Rule 12(b)(4) to dismiss for insufficient process, a court has the option of quashing the process without dismissing the action." *Shipley,* 506 B.R. at 756.  As an alternative to dismissal, the summons as to "Saint-Gobain Sekurit" must be quashed.

each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

The Plaintiff's Amended Complaint indicates that the Plaintiff intended to serve "Saint-Gobain Sekurit," "an international corporation" with its "corporate headquarters" in "Courbevoie, France." (ECF No. 10; ¶¶ 25-26). Rule 4(h) provides that foreign corporations located outside the United States must be served in the manners prescribed by Rule 4(f). Fed. R. Civ. Proc. 4(h)(2). Rule 4(f) provides that service on a foreign corporation outside the United States may be accomplished by any internationally agreed means of service, such as those authorized by the Hague Convention. Fed. R. Civ. Proc. 4(f)(1). "Compliance with the [Hague] Convention is mandatory in all cases to which it applies" and the Hague Convention applies to all civil cases. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988). The United States and France are both signatories to the Hague Convention. *Jouanny v. Embassy of Fr.*, 220 F.Supp.3d 34, 39 (D.D.C. 2016). The Hague Convention requires signatory states to designate a "Central Authority" to receive service, which will in turn effect service on the citizens of that state. *Id.* The Central Authority for France is its Ministry of Justice. *Id.*

Again, "Saint-Gobain Sekurit" does not exist. However, to the extent that the Plaintiff intended to serve a "international company" with its headquarters in France, then the Plaintiff was required to comply with the Hague Convention and issue a summons to France's Ministry of Justice. The Plaintiff has failed to comply with this requirement. Accordingly, Saint-Gobain Glass Corporation and "Saint-Gobain Sekurit" must be dismissed for insufficient service of process.

    B.    <u>"Saint-Gobain Sekurit" must be dismissed because Saint-Gobain Glass Corporation is not "Saint-Gobain Sekurit's" agent for service of process.</u>

"Clearly, the mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for service of process."

*Chung v. Tarom*, S.A., 990 F.Supp. 581, 584 (N.D. Ill. 1998), *citing Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill. App. 3d 399, 403 (4th Dist. 1990).[2] Under Illinois law, "where the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the others." *In re Subpoena to Huawei Techs. Co.*, 720 F.Supp.2d 969, 973 (N.D. Ill. 2010), *citing Schlunk v. Volkswagenwerk Aktiengesellschaft,* 145 Ill.App.3d 594 (1986). The Seventh Circuit has explained that this test requires evidence that the foreign parent corporation "controls and dominates" its domestic subsidiary. *Erno Kalman Abelesz v. OTP Bank*, 692 F.3d 638, 659 (7th Cir. 2012).[3] The Plaintiff bears the burden of establishing this agency relationship. *Chung*, 990 F.Supp. at 584.

Here, the Plaintiff's complaint does not make any allegations whatsoever regarding the relationship between Saint-Gobain Glass Corporation and "Saint-Gobain Sekurit." Moreover, to the extent that the Plaintiff intended to name Saint-Gobain Sekurit France SAS as the Defendant, the attached affidavit establishes that Saint-Gobain Glass Corporation and Saint-Gobain Sekurit France SAS are separate companies, with separate boards of directors, separate officers, separate employees, separate offices, and separate facilities. (Ex. 2; ¶¶ 28-30). Further, Saint-Gobain Glass Corporation and Saint-Gobain Sekurit France SAS do not provide any funding to each other's operations and they do not control, direct, or supervise each other's day-to-day operations. (Ex. 2; ¶¶ 31-32). The attached affidavit demonstrates that the Plaintiff cannot establish that Saint-Gobain

---

[2] The sufficiency of service is governed by state law. *See* Fed. R. Civ. Proc. 4; *See Also Chung v. Tarom, S.A.,* 990 F. Supp. 581, 583-84 (N.D. Ill. 1998).

[3] *Erno Kalman Abelesz* addressed whether the minimum contacts of a domestic subsidiary can be attributed to a foreign parent corporation for the purpose of evaluating personal jurisdiction. 692 F.3d 638. However, under Illinois law, the test for determining whether a subsidiary can be considered its parent's agent for service of process is the same as the test for determining whether a subsidiary's contacts can be attributed to the parent for the purpose of evaluating personal jurisdiction. *See Palen v. Daewoo Motor Co.,* 358 Ill. App. 3d 649, 660 n. 12 (1st Dist. 2005).

Sekurit France SAS "controls and dominates" Saint-Gobain Glass Corporation, and Saint-Gobain Glass Corporation is not Saint-Gobain Sekurit France SAS's agent for service of process. Accordingly, "Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(5) for insufficient service of process.

III.   **"Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(2) because "Saint-Gobain Sekurit" is not subject to personal jurisdiction in Illinois.**

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). "The governing statute in Illinois [735 ILS 5/2-209] permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment. *Id.* (noting that there is "no operative difference" between the Illinois Constitution and the U.S. Constitution and therefore it is enough to analyze federal due process limits on personal jurisdiction).

"The Due Process Clause authorizes personal jurisdiction over out-of-state defendants when the defendant has certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kipp*, 783 F.3d at 697, *citing Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "Courts recognize two types of personal jurisdiction: general and specific." *Id.* "General jurisdiction is all-purpose; it exists only when the party's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id.* at 697-98, *citing Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014). "Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum." *Id.* at 698.

In addition to assessing whether the defendant has minimum contacts with the forum, a court "must evaluate whether exercising personal jurisdiction [...] is reasonable (*i.e.*, comports with traditional notions of fair play and substantial justice) by considering the following five

factors: (1) the burden on the defendant of having to litigate in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies;  and (5) the shared interests of the several States in furthering fundamental substantive policies. *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114.

"Once a defendant has moved for dismissal based on the lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp*, 783 F.3d at 697.

A.      "Saint-Gobain Sekurit" is not subject to general jurisdiction in Illinois because it is not "essentially at home" in Illinois.

General jurisdiction "exists only when the party's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Kipp*, 783 F.3d at 697-98. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler*, 571 U.S. at 137.[4] "Mere purchases, even if occurring at regular intervals are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984).[5]

---

[4] In *Daimler*, the Supreme Court found that a German car manufacturer was not subject to general jurisdiction in California, even though the German manufacturer had a US subsidiary that was the exclusive distributor of its vehicles in the United States, the US subsidiary was "the largest supplier of luxury vehicles to the California market," and the subsidiary's sales in California represented 2.4% of the manufacturer's worldwide sales. 571 U.S. at 123. The Court rejected the "doing business" test as the measure of general jurisdiction, and explained that the mere fact that the foreign manufacturer had "sizable" sales in California was not a sufficient basis for general jurisdiction, because "a corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139-40 n. 20.
[5] In *Helicopteros*, the Supreme Court found that a Peruvian helicopter operator was not subject to general jurisdiction in Texas even though the operator agreed to provide helicopter transportation services in Peru to a Texas-based joint venture, the operator purchased the majority of its fleet in Texas, and the operator sent its pilots and other personnel to Texas for training on how to operate and maintain the helicopters. 466 U.S. 408.

Moreover, the mere fact that a foreign corporation has placed goods into the "stream of commerce" that are ultimately sold in the forum State is not a basis for asserting general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011).[6]

Beyond the state of incorporation and the principal place of business, the Supreme Court has explained that "*Perkins v. Benguet Consol. Mining Co.*, remains the textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." *Daimler*, 571 U.S. at 129, *citing Perkins*, 342 U.S. 437. In *Perkins*, the Supreme Court found that a company incorporated in the Philippines was subject to general jurisdiction in Ohio when the company ceased operations in the Philippines due to Japan's occupation of the country during World War II, and the company's president moved to Ohio and operated the company out of an office in Ohio. 342 U.S. at 448. Based on those facts, the Supreme Court found that the company was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business." *Daimler*, 571 U.S. at 130.

Here, "Saint-Gobain Sekurit" is not subject to general jurisdiction in Illinois. Again, "Saint-Gobain Sekurit" is not subject to personal jurisdiction anywhere because it does not an actual company. However, to the extent the Plaintiff intended to sue Saint-Gobain Sekurit France SAS, that company is not subject to general jurisdiction in Illinois because it is incorporated and headquartered in France. (Ex. 2; ¶ 23). Further, Saint-Gobain Sekurit France SAS does not have any contacts with Illinois that are "so constant and pervasive as to render it essentially at home in the forum State." *Kipp*, 783 F.3d at 697-98. Saint-Gobain Sekurit France SAS does not have any offices in Illinois, and does not own, lease, or otherwise possess any real estate in Illinois. (Ex. 2;

---

[6] In *Goodyear*, the Supreme Court found that European subsidiaries of a U.S. parent corporation were not subject to general jurisdiction in North Carolina, even though a "small percentage" of the subsidiaries' products – "tens of thousands out of tens of millions" – were sold in North Carolina through the U.S. parent company's distribution networks. 564 U.S. at 921.

¶ 25). Saint-Gobain Sekurit France SAS does not have any employees in Illinois, and does not have a registered agent in Illinois. (Ex. 2; ¶¶ 26-27). Moreover, the mere fact that Saint-Gobain Sekurit France SAS manufactures component parts that may be incorporated into products that are unilaterally distributed by others in Illinois is not sufficient to subject Saint-Gobain Sekurit France SAS to general jurisdiction in Illinois. Accordingly, "Saint-Gobain Sekurit" must be dismissed because it is not subject to personal jurisdiction in Illinois.

B. <u>"Saint-Gobain Sekurit" is not subject to specific jurisdiction in Illinois because the Plaintiff has not established that "Saint-Gobain Sekurit" actually manufactured the subject glass, and even if it did, "Saint-Gobain Sekurit" is not subject to specific jurisdiction in Illinois merely because its glass was incorporated into a product that was unilaterally taken into Illinois by others.</u>

"Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum." *Kipp*, 783 F.3d at 698. "The constitutional touchstone remains whether the defendant purposefully established minimum contacts in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). The mere "foreseeability of causing injury" is "not a sufficient benchmark for exercising personal jurisdiction." *Id.* "Instead, the foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475.

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third

11

person." *Id., citing World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) (finding that New York automobile distributor that operated only in New York, New Jersey, and Connecticut was not subject to specific jurisdiction in Oklahoma when the distributor sold a car to a dealer, who then sold the car to a consumer, who then drove the car to Oklahoma).

    The Supreme Court has rejected the argument that a seller of goods is subject to jurisdiction wherever its goods are found. *Woodson*, 444 U.S. at 296 (rejecting argument that seller effectively appoints its goods as its agents for service of process). "A defendant's awareness that the stream of commerce may or will sweep [its] product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112. "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted* the forum; as a general rule, it is not enough that the defendant might have *predicted* that its goods will reach the forum State." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (emphasis added).

    Consistent with the foregoing, the Supreme Court has rejected the argument that a defendant is subject to specific jurisdiction simply because it "knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." *J. McIntyre,* 564 U.S. at 877 (finding that U.K.-based manufacturer of scrap metal machine was not subject to specific jurisdiction in New Jersey, even though the defendant hired a U.S. distributor to sell its machines in the U.S., the defendant attended trade conventions in the U.S., and four of the defendant's machines were sold in New Jersey, explaining that "these facts may reveal an intent to serve the U.S. market, but they do not show that [the defendant] purposefully availed itself of the New Jersey market); *see also Asahi,* 480 U.S. at 105-08 (finding that a Japanese component-part supplier was not subject to specific

jurisdiction in California when the supplier sold its parts to another foreign intermediary, even though the supplier's component part was ultimately incorporated into a Honda motorcycle that the end consumer used in California, and even though a substantial number of the supplier's components were incorporated into goods sold in California, because the Japanese company did not purposefully direct its product toward California).

"Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp*, 783 F.3d at 697. Here, the Plaintiff alleges that his 2015 ML 350 had a panoramic sunroof. [7] However, no Saint-Gobain entity manufactured the glass for the panoramic sunroof option on the 2015 ML 350. If no Saint-Gobain entity actually manufactured the Plaintiff's panoramic sunroof, then specific jurisdiction is impossible because the Plaintiff's claim does not arise out of any contacts that any Saint-Gobain entity has with Illinois.[8] *See uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 429 (7th Cir. 2010) (explaining that the claim must "arise out of or relate to" the defendant's contacts).

Even if the Plaintiff could establish that a Saint-Gobain entity manufactured the Plaintiff's sunroof glass, the Plaintiff does not allege that any Saint-Gobain entity "targeted" Illinois as a market for its glass. *J. McIntyre*, 564 U.S. at 882. Rather, Saint-Gobain entities in Mexico and China manufactured the glass for certain 2015 ML 350 sunroof options, and those entities delivered the glass to an intermediary, Inteva Products, at its facilities in either Gadsden, Alabama or Puebla, Mexico. Other than Saint-Gobain's manufacture and delivery of the sunroof glass to

---

[7] In addition to the Plaintiff's own allegations, upon information and belief, the VIN number for the Plaintiff's vehicle is 4JGDA5HB2FA533614, which supports the Plaintiff's admission that his vehicle had the multiple-panel panoramic sunroof option. (Ex. 2; ¶¶ 14-16).

[8] The Plaintiff cannot rely on the claims of the putative class members to make an argument for personal jurisdiction. First, the named Plaintiff cannot represent any class if the named Plaintiff's complaint fails. *Davis v. Ball Memorial Hospital Assoc.,* 753 F.2d 1410, 1420 (7th Cir. 1985). Second, "putative class members are not parties to a lawsuit," and their potential claims cannot serve as a basis for the Court's jurisdiction. *See In re Evanston Northwestern Corp. Antitrust Litig.,* 2013 U.S. Dist. LEXIS 173794, *13 (N.D. Ill. Dec. 10 2013).

Inteva Products, no Saint-Gobain Sekurit entities would have had any further involvement in the manufacturing, assembly, distribution, or marketing of any 2015 ML 350 model vehicle to Mercedes' end consumers. After Saint-Gobain delivered the glass to Inteva Products, the unilateral activity of third parties controlled the ultimate destination of the finished vehicles.

Indeed, the Plaintiff alleges that the subject vehicle was a used vehicle that he purchased at a dealership in Indiana and drove to his home in Illinois. The prior owner(s) of the vehicle and the original dealership could very well have been located in yet additional states. No Saint-Gobain entity can be subject to personal jurisdiction based on such random, fortuitous, and attenuated contacts that are the products of the unilateral actions of at least six different third parties (Inteva, Mercedes, the initial dealership, the initial owner, Napleton, and the Plaintiff). Rather, the facts in *Woodson*, *Asahi,* and *J. McIntyre* are controlling here. Accordingly, "Saint-Gobain Sekurit" must be dismissed for lack of personal jurisdiction.

      C.    <u>Saint-Gobain Glass Corporation's contacts are not attributable to "Saint-Gobain Sekurit," and even if they were, the Plaintiff has not established that Saint Gobain Glass Corporation is subject to either general or personal jurisdiction in Illinois.</u>

"As a general rule, the jurisdictional contacts of a subsidiary corporation are not imputed to the parent." *Purdue Research Found. v. Sanofi-Synthelabo*, S.A., 338 F.3d 773, 788 n. 17 (7th Cir. 2003). For a subsidiary's contacts to be imputed to the parent, the parent must exert "an unusually high degree of control" and "dominate" the subsidiary, or the subsidiary's corporate existence must be "simply a formality." *Erno*, 692 F.3d at 658-59. Here, for the same reasons as detailed in Section I.B above, the Plaintiff's complaint does not make any allegations whatsoever regarding the relationship between Saint-Gobain Glass Corporation and "Saint-Gobain Sekurit." Moreover, to the extent that the Plaintiff intended to name Saint-Gobain Sekurit France SAS as the defendant, the attached affidavit demonstrates that the Plaintiff cannot establish that Saint-

Gobain Sekurit France SAS "controls and dominates" Saint-Gobain Glass Corporation. (Ex. 2; ¶¶ 28-32). Accordingly, "Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Even if Saint-Gobain Glass Corporation's contacts could be imputed to "Saint-Gobain Sekurit," the Plaintiff has not alleged that Saint-Gobain Glass Corporation itself is subject to personal jurisdiction in Illinois. Regarding general jurisdiction, Saint-Gobain Glass Corporation is incorporated in Delaware and headquartered in Pennsylvania, and does not otherwise have any offices or employees in Illinois. Regarding specific jurisdiction, Saint-Gobain Glass Corporation does not manufacture or sell any sunroof glass. Therefore, even if Saint-Gobain Glass Corporation's contacts could be imputed to "Saint-Gobain Sekurit," Saint-Gobain Glass Corporation itself is not subject to personal jurisdiction in Illinois. Accordingly, "Saint-Gobain Sekurit" must be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

WHEREFORE, the movant, SAINT-GOBAIN GLASS CORPORATION, respectfully requests that this Honorable Court dismiss the Plaintiff's claims against "Saint-Gobain Sekurit," pursuant to Rule 12(b)(2), (b)(4), and (b)(5), and for any further relief that this Honorable Court finds just and appropriate.

Dated:  September 22, 2020

J. Hayes Ryan (6274197)
HayesRyan@grsm.com
Brian H. Myers (6305867)
BMyers@grsm.com
**GORDON REES SCULLY MANSUKHANI, LLP**
One North Franklin, Suite 800
Chicago, IL 60606
(T): 312-565-1400

Respectfully submitted,
**SAINT-GOBAIN GLASS CORPORATION,**

By: _____
*Brian H. Myers, one of its Attorneys.*

15

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2020, I electronically filed the foregoing document

with the Clerk of Court, and sent a copy of the foregoing document via electronic mail to:

| *Counsel for Plaintiff* | *Counsel for Napleton* |
|---|---|
| Maudia Washington | Renato Mariotti |
| WASHINGTON LAW OFFICES | Holly H. Campbell |
| 40 Dupage Court, Suite 106 | Christopher M. Hohn |
| Elgin, Illinois 60120 | Daniel C. Cox |
| maudia@ilwashingtonlaw.com | THOMPSON COBURN, LLP |
| | 55 East Monroe Street, 37th Floor |
| | Chicago, IL 60603 |
| | rmariotti@thompsoncoburn.com |
| | hcampbell@thompsoncoburn.com |
| | chohn@thompsoncoburn.com |
| | dcox@thompsoncoburn.com |

By:  /s/ Brian H. Myers

*One of the Attorneys for Saint-Gobain*
*Glass Corporation*