**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRUCE PICKENS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | CLASS ACTION COMPLAINT |
| | ) | CASE NO. 1:20-cv-3470 |
| Plaintiff, | ) ) | |
| vs. | ) | |
| | ) ) | Amount Claimed: $500,000,001.00 plus court costs and attorney's fees. |
| | ) | |
| MERCEDES-BENZ, USA, LLC | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff, Bruce Pickens, ("Plaintiff" or "Mr. Pickens"), brings this class action individually and on behalf of all others similarly situated against Defendant Mercedes-Benz USA, LLC ("Mercedes-Benz" or "MBUSA" or "Mercedes"), alleging as follows:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all persons who purchased or leased in Illinois certain vehicles equipped with uniform and uniformly defective sunroof systems that were designed, manufactured, distributed, warranted, marketed, and sold or leased by Mercedes-Benz USA, LLC (collectively "Mercedes" or "MBUSA" or "Defendant" or "MBUSA"), as described below.

2.      The vehicles in this action include, but are not limited to the 2015 Mercedes-GLA, 2008-2019 Mercedes C-Class, 2010-2017 Mercedes CLS-Class, 2010-2019

Mercedes E-Class, 2010-2016 Mercedes GL-Class, 2010-2019 Mercedes GLS-Class, 2010-2019 Mercedes GLA-Class, 2012-2015 Mercedes M-Class, 2010-2019 Mercedes GLE-Class, 2010-2015 GLK-Class, and 2010-2019 Mercedes GLC-Class (the "Class Vehicles").

3.      The Class Period arranges from 2010 to 2020.

4.      This action is brought to remedy violations of law in connection with Mercedes' design, manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles. The Class Vehicles' sunroof systems have one or more serious design defects, including that they were installed with a defective bonding agent between the glass panel and the sliding roof frame that causes the sunroof to detach from the roof frame and shatter and thus become unusable for its intended purpose.

5.      On information and belief, the sunroof systems are substantially the same, from a mechanical engineering standpoint, in all Class Vehicles, in that the sunroof system in each Class Vehicle is made up of substantially the same components and uses the same general mechanism.

6.      At relevant times, Mercedes engaged in the practice of misrepresenting the safety of the vehicles. As a result of this practice, Mercedes' vehicles have harmed vehicle owners, lessees, and passengers.

7.      Plaintiff is among the millions of consumers who purchased one or more of Mercedes-Benz's vehicles during the ten years preceding the filing of this Complaint. Plaintiff and other similarly situated purchasers of the Class Vehicles relied on Mercedes'

misrepresentations in purchasing the vehicles, and would not have purchased the vehicles, had facts regarding the true safety of the vehicles been disclosed.

8.  Defendant failed to adequately warn against the negative effects and risks associated with the Class Vehicles. Defendant failed to provide any warnings regarding the potential shattering of the sunroof.

9.  Defendant omitted, concealed, and inadequately provided critical safety information regarding the use of the Class Vehicles in order to induce their purchase and use. Defendant engaged in and continued to engage in conduct likely to mislead consumers including Plaintiff. The conduct was fraudulent, unfair, and unlawful.

10.  Defendant knew or should have known about the shattering of Mercedes' sunroof. Mercedes received other complaints concerning the unexpected and sudden explosion of its sunroof prior to Plaintiff's sunroof exploding. In January 2020; Mercedes received a sunroof recall notification from the National Highway Traffic Safety Administration.

11.  Despite clear knowledge that Mercedes' sunroof had a significant chance of shattering unexpectedly, Defendant continued to market and sell Class Vehicles without warning consumers of the significant risks of unexpected sunroof explosion due to design defect of its' sunroofs.

12.  Mercedes failed to provide a permanent in-warranty fix for the sunroof defect and failed to reimburse Class Members for the costs of remedying it. As a result of Mercedes' misconduct, Plaintiff and Class Members were harmed and suffered actual monetary damages.

13.    November of 2019, Plaintiff purchased a pre-owned certified 2015 ML350 Mercedes-Benz with a sunroof system. The sunroof was defective, and on March 3, 2020, while Plaintiff was driving, the sunroof spontaneously shattered, spraying glass throughout the car. The incident involving Plaintiff was the product of a common and known defect in the sunroof installed in the Class Vehicles.

### THE PARTIES

14.    Plaintiff is a citizen of Illinois, who resides in Glenwood, Illinois. During the 2010-2020 Class Period, Plaintiff was the owner of a 2015 ML 350 Mercedes and purchased the vehicle from Napleton Autowerks of Indiana, Inc. in Schererville, Indiana. Napleton Autowerks of Indiana is an agent or distributor of Mercedes products, including Class Vehicles.

15.    In Plaintiff's vehicle purchase from Mercedes, he relied on Mercedes' representations of the safety of its vehicles, without knowledge of the sunroof's exploding parts. Defendant had misrepresented material facts regarding the quality and safety of the sunroof, that had occurred with or without the operation of the sunroof which exploded during normal driving operation.

16.    Defendant MBUSA USA, LLC is a Delaware corporation with its principal place of business in Atlanta, Georgia.

17.    Prior to July 2015, MBUSA 's principal place of business was in Montvale, New Jersey.

18.    MBUSA is a wholly-owned subsidiary of Daimler AG.

19.    MBUSA engaged, at relevant times, in the business of marketing, warranting,

distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, throughout Illinois, and across the United States.

20.     Defendant is a German corporation with its principal place of business in Stuttgart, Germany. It was engaged at relevant times, in the business of designing and manufacturing the Class Vehicles.

21.     Upon information and belief,  MBUSA was solely responsible for designing the Class Vehicles, including their defective sunroof systems. It is therefore an essential party to this action concerning a design defect in the Class Vehicles' sunroof systems.

22.     Upon information and belief, MBUSA has, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over MBUSA 's work, including but not limited to the design of Class Vehicles, the manner of Class Vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty,  representations made, and facts withheld from consumers and the public about the sunroof system defect.

23.     MBUSA has been directly involved in assisting, directing, and controlling MBUSA 's authorized dealers' handling of Class Member complaints regarding the sunroof system defect.

24.      MBUSA has held out as its agent for all purposes in the United States and especially Illinois, but especially for sales and marketing of Class Vehicles and for ongoing management of relationships with purchasers and lessees of Class Vehicles.

25.     Based on the foregoing actions, representations, and omissions, Plaintiff and Class Members justifiably relied on MBUSA 's representations regarding the Class

Vehicles.

## **JURISDICTION AND VENUE**

26. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this case includes claims arising under federal law.

27. Additionally, the elements of subject matter jurisdiction pursuant to 28 U.S.C. §1332(d) and the Class Action Fairness Act are present: the amount in controversy exceeds 00 and Defendant is a citizen of a foreign country, and is thus diverse from Plaintiff and Class Members.

28. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. §1367(a).

29. This Court is the proper venue for this action pursuant to 28 U.S.C. Section 1391 because a substantial part of the events, acts, and omissions giving rise to the claims herein occurred in this District. Plaintiff resides in this District, and the incident occurred in this district. Additionally, Mercedes-Benz advertised, sold, and distributed its vehicles, which is the subject matter of this lawsuit, in this District.

30. This Court has personal jurisdiction over MBUSA because MBUSA is authorized to do business in this District, conducts substantial business in the District, has its principal place of business in the District, is at home in the District, and some of the actions giving rise to the complaint took place in the District. Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over MBUSA permissible under traditional notions of fair play and substantial justice.

31.     This Court also has personal jurisdiction over MBUSA under 18 U.S.C. § 1965 because MBUSA is found in, has an agent in, or transacts business in this District.

32.     This Court has personal jurisdiction over Defendant because  MBUSA has continuous and systematic general business contacts in this District.

33.     By using MBUSA  as its channel for marketing, distributing, warranting, selling and leasing the designed Class Vehicles in the District, it has deliberately taken affirmative steps to make -designed vehicles available to consumers in the District and the rest of Illinois, including Plaintiff and Class Members; created continuing obligations between and residents of the District; and purposefully availed itself of the benefits and protections of conducting business in the District.

34.     MBUSA's employees and representatives regularly visit MBUSA in Illinois, thereby continuously conducting business in this District. Wholly-owned subsidiary MBUSA is at home in this District, and MBUSA's contacts in this District can be attributed to marketing and selling its products to citizens of this forum state.

35.     Plaintiff's claims here arise out of MBUSA's contacts with this District, particularly in that Plaintiff could not even have purchased his Class Vehicle if not for MBUSA's intentional acts of designing the Class Vehicles and exporting them for sale to customers in this District and the rest of Illinois, including Plaintiff and Class Members.

36.     These facts constitute sufficient bases to render the exercise of jurisdiction by this Court, over Defendant,  permissible under traditional notions of fair play and substantial justice.

## **GENERAL ALLEGATIONS**

37.     Plaintiff's dream vehicle was a MBUSA vehicle. Plaintiff worked diligently to save money to purchase a MBUSA.

38.     Mr. Pickens regularly saw advertisements for Mercedes vehicles on television, in magazines, in print and digital marketing, and on the Internet during the years before he purchased his Mercedes GLA in 2019. Although he does not recall the specifics of the many Mercedes advertisements he saw before he purchased his vehicle, he recalls the high safety standard that MBUSA advertised.

39.     Those advertisements about state-of-the-art engineering and high safety standards influenced his decision to purchase the Mercedes GLA vehicle. Had those advertisements or any other Mercedes advertising materials disclosed it's the defective design and sunroof defect, Mr. Pickens would not have purchased a Mercedes-Benz vehicle. MBUSA's high standard for safety was one of the top if not the most important reason and deciding factors for purchasing this high-end vehicle.

40.     On or about November 2019, Plaintiff was looking for a new vehicle on Car Guru and saw a MBUSA vehicle at Napleton.

41.     On or about November 19, 2019, Plaintiff and his sister, Ms. Jawanna Tallie went to Napleton to look at the vehicle.

42.     Napleton's Salesperson, Jim Dwyer, showed Plaintiff and Ms. Tallie the vehicle that they had seen online but the vehicle was too small and they did not like it.

43.     Salesperson Jim Dwyer informed Plaintiff that Napleton had just received another vehicle that week and he thought they would like it.

44.     Jim said that he had something perfect that just came in and the Fair Market

Value of the vehicle, was $50,000 but Napleton had it marked down $25,000. Plus, the

vehicle had an upgraded sound system, the steering system had a warmer, there was a

hatch in the back, and was Pre-Owed Certified with only one owner.

45.     This vehicle was within their price range and had 41,000 miles. Salesperson

Dwyer stated that everything in the vehicle has been certified by MBUSA. This was

Plaintiff's determining factor to purchase the vehicle because it was certified and this

gave him a sense of security and safety while driving a luxury, top of the line vehicle.

46.     On or about November 19, 2019; Plaintiff Bruce Pickens purchased the 2015

ML 350 Mercedes-Benz from Napleton Autowerks of Indiana, Inc. in Schererville,

Indiana.

47.     Napleton is a pre-owned certified MBUSA dealership. Mr. Pickens purchased

the Class Vehicle for his personal, family, and household use. Mr. Pickens expected his

Class Vehicle to be of good and merchantable quality and not defective. He had no

reason to know, or expect, that the sunroof was defective.

48.     On March 3, 2020, Plaintiff's sister Jawanna Tallie ("Ms. Tallie") was driving

Mr. Pickens' Mercedes-Benz ML350 vehicle ("vehicle"). She dropped her daughter off at

school at 8:45 am and then got on the expressway at the 71st Street exit in Chicago,

Illinois.

49.     At approximately 9:15 a.m. while driving on U.S. Interstate 94 in Illinois at

approximately 55 mph, Plaintiff's sunroof exploded unexpectedly. The weather condition

was clear, and the sun was shining. The temperature was approximately 35 to 40 degrees, and the heat inside the vehicle was turned to low.

50.    As Ms. Tallie was driving, she heard a big boom as loud as a gunshot, she began to duck not knowing whether someone was shooting at the vehicle. Plaintiff barely was able to maintain control of the vehicle and her composure. She swerved while she was driving in an attempt to dodge any alleged bullets, just in case someone was shooting on the highway.

51.    When she heard the unexpected sound, she looked into her mirrors but did not see any other vehicles in close proximately that could have struck the vehicle. Ms. Tallie proceeded to pull over to the shoulder to inspect for any damage to the vehicle's exterior. Upon her observation, she noticed that nothing hit the vehicle to cause the sunroof to explode. There was not any presence of any "rock" or "foreign object" that could have hit the sunroof, especially the angle of the sunroof located onto the vehicle. No trucks were present at that moment nor were she in close proximately to other vehicles.

52.    Upon inspecting the vehicle and not spotting any exterior damage, Ms. Tallie re-entered the vehicle and closed the door. As she entered the vehicle, Glass from the sunroof began to fall onto the backseat of the vehicle. Moments later, the glass from the sunroof caved inside of the vehicle.  Causing sharp glass to fall on the leather seats in the vehicle and causing scratches on the leather.

53.    The mesh liner was not closed; therefore, glass sprayed from the sunroof into the vehicle.

54.     After pulling over and examining the vehicle and looking around her surrounding to determine where the gunshot sound was coming from, she located the nearest MBUSA dealership which was MBUSA of Chicago.

55.     Upon arrival at MBUSA of Chicago, the dealership gave her a quote of around $1,400 for the sunroof glass and an installation charge of $1,780. Unfortunately, they did not have the sunroof glass in stock and would have to order it. Ms. Tallie called around to other places for about a week to get quotes and a better understanding of what caused the sunroof to explode.

56.     Ms. Tallie called Napleton Autowerks MBUSA to see if they had the glass in stock. Napleton informed Ms. Tallie that they did and they gave her a verbal quote of approximately $4,000.

57.     On March 8, 2020, Ms. Tallie took the vehicle to Napleton, and Napleton's representatives stated that she needed to have two brackets replaced at a cost of $3,800.

58.     Tallie was upset concerning the additional cost because MBUSA of Chicago never mentioned that she needed new brackets nor a new sunscreen. Napleton's representative informed her in order to install the sunroof, she needed new brackets.

59.      Napleton also stated that she needed a new screen that costs $6,000. Plaintiff informed Napleton that the unexpected repairs and costs were outrageous and inquired whether there was anything that MBUSA could do concerning the sunroof.

60.     Jim Dwyer contacted MBUSA Headquarters and MBUSA Headquarters stated as a goodwill gesture they can cover $250 of the repair but the Plaintiff would have to sign a waiver not to sue. Plaintiff declined.

61.     Napleton suggested a trade for another 2015 MBUSA but he would have to put $4,000 down and the monthly payments would double. Plaintiff declined.

62.     After having the Plaintiff's vehicle for approximately a week, Napleton called him and Ms. Tallie and told them that the vehicle was ready and to bring back the courtesy vehicle because someone purchased it.

63.     Joe the Sales Manager, informed Plaintiff to bring the vehicle back to the dealership by 4 pm that day.

64.     When Plaintiff arrived, the dealership was closed. Plaintiff came back the following day and asked if her vehicle was ready.

65.     Napleton drove Plaintiff's vehicle from the back parking lot to deliver to Plaintiff. Immediately upon seeing the vehicle, Plaintiff could see wires hanging from the sunroof. Also, the glass in the sunroof was not fixed but removed.

66.     Plaintiff proceeded to get back into the courtesy vehicle because the vehicle was not fixed but still in disarray. Napleton closed the garage door so that she could not leave.

67.     Tony the General Manager came to speak with Ms. Tallie.

68.     From March 8, 2020, to the end of April 2020; Napleton had Plaintiff's vehicle and it took them a month to repair the vehicle's sunroof.

69.     After 30 days, Napleton finally repaired the vehicle but due to Napleton not keeping the vehicle in its garage or under a covering, the rain got into the vehicle and caused substantial water damage. Watermarks surrounded the entire interior of the

vehicle and remain present. The defective sunroof and permanent watermarks have caused a substantial decrease and loss of aesthetic to the vehicle.

70.     Many Mercedes-Benz brand automobiles are sold with large sun or moon roofs often referred to as panoramic roofs or factory-installed sunroofs (collectively referred to herein as "sunroof"), because of their large size span a substantial portion of the vehicle's roof and pose unique engineering challenges. They require precise strengthening, attachment, and stabilization of the glass. Several manufactures have failed to meet these demands, and at least three manufacturers have issued safety recalls, including MBUSA.

71.     The larger sunroof on Mercedes-Benz vehicles is substantially similar in design. They also have a similar manufacturing process.

72.     Several of Mercedes-Benz's models have the same problem with their sunroof. Multiple Mercedes-Benz drivers have complained that their sunroof exploded, shattered, and/or cracked without warning. This is a serious safety concern, as the shattering of the sunroof often occurs while the car is being driven, and shards of glass fall on and around the occupants. Moreover, the explosion or shattering makes a loud and startling noise, which also has the propensity to distract drivers while they are operating the vehicle. Nonetheless, Defendant not only refused to warn drivers, but they also continued to sell and lease their vehicles without disclosing this defect to consumers.

73.     At least the last ten or more years, Mercedes-Benz has received complaints from vehicle owners and lessees concerning their dangerous design but instead of recalling the vehicles, they offer vehicle owners $250 to $500 as a "good faith" gesture in return for not to pursue legal actions against them.

74. Mercedes has failed to provide a permanent in-warranty fix for the Defect and failed to reimburse Class Members for the actual costs of its inadequate and temporary "solutions."

75. Mercedes-Benz's panoramic sunroof installment or replacement is expensive and can cost upwards of the low end of $2,000 and upwards of $9,000 plus.

76. Plaintiff was quoted approximately $9,200 to replace his sunroof. Plaintiff's insurance did not cover the sunroof repair nor did MBUSA offer any discounts or to repair the vehicle for free.

77. The vehicle was still covered under the MBUSA's warranty. Napleton had the vehicle for close to a month to repair his sunroof. Once he received the vehicle back, there were water spots throughout the vehicle, especially around the sunroof because the sunroof was open and Napleton did not have the vehicle in a garage.

78. Plaintiff purchased a MBUSA vehicle because of the luxury, high standard of safety, and quality associated with a premium vehicle.

79. Prior to this purchase, Mr. Pickens was not advised of the defect and tendency, known by Mercedes, that the glass in his vehicle's sunroof, was prone to explode. Regarding the safety, capabilities, and comfort of his vehicle, Mr. Pickens relied upon MBUSA's direct assertions via the Company's Napleton agent/salesmen, brochures, and ads.

80. Salesman Jim Dywer informed Plaintiff and Ms. Tallie that the vehicle passed all safety tests and is certified pre-owned and have passed all the rigorous tests required by MBUSA.

81.    Plaintiff relied on Ms. Dywer's statements and purchased the vehicle with confidence.

82.    According to research, the unexpected shattering of Mercedes Benz sunroof has occurred in different makes and models of Mercedes Benz vehicles.

83.    As a result of Mercedes's alleged misconduct, Plaintiff and Class Members were harmed and suffered actual damages, in that the Class Vehicles have manifested, and continue to manifest, the sunroof defect, and Mercedes has not provided a permanent remedy for this Defect. Furthermore, Plaintiff and Class Members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the defective sunroof design.

84.    On information and belief, prior to the manufacture and sale of the Class Vehicles, MBUSA knew of the sunroof design defect through, or as evidenced by, sources such as pre-release design and testing information; replacement part sales data; consumer complaints made directly to Mercedes, complaints to the National Highway Traffic Safety Administration (NHTSA), and/or posted on public online vehicle owner forums. **EXHIBIT A.**

85.    A simple online search reveals thousands of Mercedes-Benz's owners and lessees have experienced an unexpected and unexplained shattering of their sunroof.

**EXHIBIT B.**

**PANORAMIC ROOF Shattered** ▢12-26-2017, 03:04 PM

"So woke up yesterday morning to find that my PANORAMIC ROOF glass shattered with no signs of impact from anything dropping. Thankfully I had an inside tint installed so all the glass in tact and not all over the inside of my car. Will keep you guys posted on the repair

process, already getting the run around from local dealers about getting a loaner during the holidays."

**GLK250 panoramic roof exploded** 01-24-2018, 01:02 AM

"On my way home about two weeks ago I heard a loud BANG and thought someone had shot my car. It was dark and raining. When I arrived home I got a flashlight and inspected the car. No visible damage. I'm 5'1" and it didn't occur to me to even look at the roof. About a week or so later another big BOOM but this time I heard what sounded like sand sliding off the roof. I thought I'd been hit by a rock. Dark and rain again, but next AM we found the shattered glass. Farmers recommended Safelight who suggested I take the car to a local body shop for a "wrap" until they could get replacement glass. Needless to say with all the rain we get in Oregon in January, I took it to my MBZ dealer who repaired it (at my expense) and never mentioned the possibility that this was a MBZ issue. I'm waiting to hear if Farmers will cover the dealer repair. This is definitely a safety issue and someone needs to address it."

Originally Posted by **G55K** ☑ ▫03-19-2018, 01:25 PM

"I have a GL550 with approx 14,000 miles on it. I was driving from Moab to Lake Powell and the panoramic rough literally exploded. Scared the crap out of me! It wasn't a rock as there were no cars around us. We were in the middle of no where when it happened. It was about 105F outside so my guess is that it was caused by the heat.

The dealership is refusing to cover this under warranty. They admit that it does't look like anything hit it and that it might be heat related. I plan on escalating this to MBUSA.

Has anyone else had this happen to their GL?"

86.     On January 3, 2020; The National Highway Traffic Safety

Administration sent correspondence to Greg Gunther the Department

Manager VCA of MBUSA concerning Mercedes Benz's

acknowledgment of NHTSA's demand to recall Mercedes-Benz's

vehicles with the sunroof design defect. The problem specifically affects all trims of these vehicles: 2001–2007 C-class, 2003–2009 CLK-class, 2007–2011 CLS-class, and 2003–2009 E-class.

87. On January 5, 2020; The National Highway Traffic Safety Administration (NHTSA) has announced a recall of nearly 750,000 U.S.-market Mercedes-Benz vehicles because sunroof glass panels can separate from their frames.

88. Mercedes-Benz began investigating the problem in December 2017 when it received reports of detached sunroofs outside the U.S. and couldn't come up with a clear root cause until an unspecified date after November 2018.

89. NHTSA brought the sunroof defect to MBUSA before Plaintiff purchased his vehicle and MBUSA acknowledged a recall on or about January 2020; a couple of months prior to Plaintiff's sunroof dangerously and unexpectedly exploding.

90. Mercedes Benz was placed on notice prior to Plaintiff purchasing his vehicle and did not warn Plaintiff nor recall their vehicles.

91. According to NHTSA, MBUSA's vehicles' sunroof design defect possibly occurs due to " The bonding between the glass panel and the sliding roof frame may deteriorate, possibly resulting in the glass panel detaching from the vehicle." Not a "rock" or an "unknown" or "foreign" object that MBUSA is claiming.

## CLASS ACTION ALLEGATIONS

92.     Plaintiff brings this action individually and as a Class action on behalf of the following Class: All persons in Illinois who purchased or leased one or more of Defendant's vehicles with a panoramic or factory-installed sunroof ("sunroof ") at any time between 2010 and the present (the "Class") and the vehicle had a panoramic or factory-installed sunroof (collectively known as "sunroof").

93.     Plaintiff brings this action on behalf of himself and all other similarly situated members of the proposed class (the "Class"), defined as follows: Illinois residents who are current or former owners and lessees that purchased or leased a Class Vehicle. A "Class Vehicle" is a vehicle of any of the following models/model years: 2015 Mercedes-GLA, 2008-2019 Mercedes C-Class, 2010-2017 Mercedes CLS-Class, 2010-2019 Mercedes E-Class, 2010-2016 Mercedes GL-Class, 2010-2019 Mercedes GLS-Class, 2010-2019 Mercedes GLA-Class, 2012-2015 Mercedes M-Class, 2016-2019 Mercedes GLE-Class, 2010-2015 GLK-Class, and 2016-2019 Mercedes GLC-Class.

94.     Class Members include all Illinois residents who purchased or leased a Mercedes-Benz vehicle and who have incurred or has not incurred actual expenses in connection with either the diagnosis or repair of the vehicle's sunroof.

95.     Plaintiff reserves the right to redefine the Class prior to certification.

96.     Excluded from the Class is any entity in which Defendants have a controlling interest, officers or directors of Mercedes-Benz, all government entities, and any justice or judicial officer presiding over this matter.

97.     This action is brought and may be properly maintained as a Class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of said provisions.

98.     The Class is so numerous that the individual joinder of all of its members is impracticable. The exact number and identities of the members of the Class are unknown to Plaintiff.

99.     Additionally, the Court must direct notice in a reasonable manner to all Class members who would be bound by the proposal if giving notice is justified by the parties' showing that the Court will likely be able to approve the proposal under Rule 23(e)(2).

100.    Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class members include, but are not limited to, the following:

> a. whether Mercedes knew or should have known about the sunroof system defect, and, if so, how long Mercedes knew or should have known of the defect;
>
> b. whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;
>
> c. whether Mercedes had a duty to disclose the defective nature of the Class Vehicles to Plaintiff and Class Members;

d.   whether Mercedes omitted and failed to disclose material facts about the Class Vehicles;

e.   whether Mercedes' concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing Class Vehicles;

f.   whether MBUSA represented, through its words and/or conduct, that the Class Vehicles had characteristics, uses, or benefits that they did not have;

g.   whether Mercedes-Benz designed its vehicle and especially its panoramic and factory-installed sunroof poorly;

h.   whether Mercedes-Benz poor craftsmanship of its' vehicles panoramic and the factory-installed sunroof was of poor quality;

i.   whether Mercedes represented, through its words and conduct, that the Class Vehicles were of a particular standard, quality, or grade when they were of another;

j.   whether Mercedes advertised the Class Vehicles with the intent not to sell them as advertised;

k.   whether Mercedes' affirmative misrepresentations about the true defective nature of the Class Vehicles were likely to create confusion or misunderstanding, and therefore fraudulent;

l.   whether Mercedes' affirmative misrepresentations about the true defective nature of the Class Vehicles were and are deceptive;

m. whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

n. whether Plaintiff and other class members are entitled to a declaratory judgment stating that the sunroof system in Class vehicles are defective and/or not merchantable;

o. whether Plaintiff and Class Members are entitled to equitable relief;

p. whether Mercedes should be declared financially responsible for notifying Class members of the problems with the Class Vehicles and for the costs and expenses of permanently remedying the sunroof system defect in the Class Vehicles; and

q. whether Mercedes is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective sunroof systems.

101. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Mercedes-Benz's common course of conduct since they all relied on Mercedes-Benz's representations concerning the vehicle and purchased a Mercedes-Benz vehicle based on those representations.

102. Plaintiff will fairly and adequately represent and protect the interest of the Class. Plaintiff has retained counsel, and members of his counsel are committed to vigorously prosecuting this action on behalf of the Class.

103.   A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class and Subclass. Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendant's liability and obtain adequate compensation for the injuries sustained. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the complex legal and factual issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a Class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

104.   **Numerosity of the Class:** Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members and their addresses are known to Plaintiff or will be known to Plaintiff through discovery. Class members may be notified of the pendency of this action by mail, electronic mail, the Internet, or published notice.

105.   **Existence of Predominance of Common Questions of Fact and Law:**

Common questions of law and fact exist as to all members of the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include:

a. Whether sunroof in MBUSA vehicles are defective because they are prone to spontaneous explosion, shattering, and/or cracking;

b. Whether Defendant breached express warranties in connection with the refusal to provide coverage to repair sunroof;

c. Whether Defendant breached express warranties in connection with the defective sunroof in Mercedes Benz vehicles is an unlawful business practice;

d. Whether Defendant's conduct in connection with their defective sunroof in Mercedes Benz vehicles is an unfair business practice; and

e. The nature and extent of the class-wide injury and the measure of damages for the injury.

106.  **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he represents because Plaintiff purchased a Mercedes-Benz vehicle with a sunroof, and the sunroof failed because of a common defect. Plaintiff and the members of the Class he represents sustained the same or similar types of damages and losses.

107.  **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the proposed class. Plaintiff has retained competent counsel and intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

108. **<u>Superiority and Substantial Benefit:</u>** The Class action is superior to other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small, given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Even if each individual member could prosecute and litigate this matter, the court system would be overburden which may cause delays in litigation.

109. The Class should be certified because the prosecution of this cause of action by each member would cause inconsistent or varying adjudications.

110. The prosecution of separate actions by individual members of the Class would create a risk of adjudication with respect to this matter, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Mercedes knew of the sunroof glass defect based on its receipt of large numbers of orders for replacement sunroof.

111. Upon information and belief, Mercedes knew or should have known about the sunroof system defect because of the higher-than-expected number of replacements sunroof ordered from Mercedes, which should have alerted Mercedes that the sunroof system defect existed and affected a wide range of its vehicles.

112. Upon information and belief, Mercedes authorized service centers to use replacement parts that they ordered directly from Mercedes. Therefore, Mercedes would have detailed and accurate data regarding the number and frequency of replacement part

orders, including replacement sunroof. The ongoing high sales of replacement sunroof were (or should have been) known to Mercedes.

*Applicable Warranties*

113.    Mercedes sold Class Vehicles with a "New Vehicle Limited Warranty" which included, among other warranties, protections against DEFECTS:

Mercedes-Benz USA, LLC (MBUSA  warrants to the original and each subsequent owner of a new MBUSA vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

114.    Mercedes represents that its Certified Pre-Owned ("CPO") vehicles are backed by one of the most comprehensive certified pre-owned warranties available. Under Mercedes-Benz Certified Pre Owned "Every Certified Pre-Owned Mercedes-Benz is covered by any remaining portion of the Mercedes-Benz four-year/50,000 mile New Vehicle Limited Warranty. Then, the CPO Limited Warranty provides comprehensive coverage for another 12 months with unlimited miles. This means up to 5 years of unlimited mileage coverage." **EXHIBIT C.**

*Applies to Certified Pre-Owned Mercedes-Benz vehicles purchased on or after January 15, 2014. Please see your dealer for full details, limitations, and a copy of the Mercedes-Benz Certified Pre-Owned Limited Warranty and available Extended Limited Warranty.

115.    The program includes a warranty for 12 months or up to 100,000 total accumulated vehicle miles. Mercedes represents that its CPO vehicles are factory-backed

and the limited warranty provides up to five years or 100,000 total vehicle accumulated miles of coverage.

116.   Based on Plaintiff's experiences and reports from other consumers, Mercedes refuses to cover the nonpermanent "fixes" under warranty, and instead requires Class Members pay out of pocket for these nonpermanent "fixes" for the sunroof replacement and repair even if Class Members' vehicle remained under warranty at the time.

<u>**COUNT I:**</u>
<u>**BREACH OF EXPRESS WARRANTY**</u>

117.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

118.   Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

119.   Defendant expressly warranted to Plaintiff and Class members, among other things, that "all-new Mercedes-Benz vehicles are protected by our New Vehicle Limited Warranty, covering defects in material or workmanship for 48-months or 50,000 miles, whichever comes first." Defendant also made other express warranties, alleging, the express warranties were part of the basis of the bargain for Plaintiff and Class members.

120.   Defendant expressly warranted to Plaintiff and Class members, "Every Certified Pre-Owned Mercedes-Benz is covered by any remaining portion of the Mercedes-Benz four-year/50,000 mile New Vehicle Limited Warranty. Then, the CPO Limited Warranty provides comprehensive coverage for another 12 months with unlimited miles.

121.   Defendant represented and advertised that their automobiles, including sunroof, were luxury, top-of-the-line cars, built to the highest standard, and were safe for their intended use. Among other things, Defendant advertises and represent that the safety-first features of Mercedes-Benz "set as standard that all automobiles eventually follow," and its vehicles utilize "intelligent Drive [which] is, essentially, the entire suite of groundbreaking driving safety features you'll find across our entire vehicle line."

122.   Mercedes-Benz's slogan is "The best or nothing." According to their website, "The three-pointed star doesn't just identify a Mercedes-Benz. It represents over a century of tradition, a commitment to quality, and a promise to always shine brighter than ever before."

123.   According to Mercedes-Benz's website, "Luxury through peace of mind. To deliver the best or nothing, safety must come first. It's why we devote so much time to a moment we hope never happen, and why every Mercedes-Benz is engineered to make an accident less severe, less damaging, and even less likely."

124.   MBUSA's digital advertisements print and digital mention safety as a top priority.

125.   Also, according to Mercedes-Benz's Accident Investigation section of its website, "Just a few pieces of data can mean the difference between a collision and a close call. That is why we created the Mercedes-Benz Accident Investigation team, a special unit in Stuttgart, Germany dedicated to gathering and evaluating information that has the potential to save lives across the world. From impact speed to collision angles, the data collected at the scene informs our ongoing improvement of safety features and has

led to the development of groundbreaking technology like ATTENTION ASSIST and DISTRONIC PLUS with PRE-SAFE® Brake."

126. Mercedes-Benz and as the manufacturer, distributor, and/or seller expressly warranted that the vehicle was safe to drive by marketing on their website the safety standards of Mercedes, Napleton's representative informing Plaintiff that the vehicle is certified-preowned and has passed extensive safety standards.

127. Plaintiff and the Class have been injured because they unknowingly paid for a vehicle with a defective part. Plaintiff and the Class would not have purchased or paid a premium price for the vehicle had they been made aware of the truth about the unexpected scattering of the sunroof.

128. Defendant breached the express warranty by selling Mercedes-Benz automobiles with a known defective and unsafe sunroof system, and by failing to cover Plaintiff and Class members for repair and other costs associated with the defective sunroof in the Mercedes-Benz vehicles. As a result of Defendant' breaches, Plaintiff and the Class members have suffered damages and/or are entitled to restitution, including but not limited to, the cost of the purchase or lease of Mercedes-Benz vehicles associated with sunroof, the cost of repair, and/or the cost of inspection and/or replacement with a non-defective sunroof.

129. MBUSA certified Plaintiff's vehicle under its Certified Pre-owned warranty: Every Mercedes-Benz Certified Pre-Owned (MBCPO) vehicle comes with unparalleled peace of mind

130.   Plaintiff can't drive his MBUSA vehicle due to the high probability that the glass will shatter again. Further, Plaintiff has spent a considerable amount of time and money on repairing the sunroof and the considerable amount of time that the vehicle was at Napleton awaiting repairing.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

      a.   Defendant breached material terms of its promises to Plaintiff;

      b.   Actual, compensatory, and consequential damages;

      c.   In favor of Plaintiff and against Mercedes-Benz, for compensatory damages for breach of express warranty;

      d.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

      e.   In favor of Plaintiff against Mercedes-Benz, for attorney's fees and costs; and

      f.   For other relief, the Court deems just and proper.

## COUNT II:
## NEGLIGENT MISREPRESENTATION

131.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

132.   Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

133.   At the time of its misrepresentations, Defendant knew or should have known that these representations were false or that statements made were without Plaintiff's knowledge of their truth or veracity.

134.   Mercedes-Benz owed its customers, including Plaintiff and the Class, a duty to inform them of the potential and possibility of the sunroof unexpectedly exploding. sunroof

135.   Mercedes-Benz breached that duty, by misrepresenting the safety of the vehicles to the Class and/or omitting material facts about the vehicle.

136.   Defendant failed to communicate to Plaintiff and/or the general public that Mercedes-Benz vehicles' sunroof could explode unexpectedly and could cause serious injuries during normal operation of the vehicle, failing to warn of such risks. Instead, Defendant represented in its marketing that Mercedes-Benz vehicles were safe and effective.

137.   These negligent misrepresentations, upon which Plaintiff and the Class reasonably and justifiably relied, were intended to induce them, and did induce them to purchase vehicles.

138.   Plaintiff and Class Members relied on Mercedes-Benz's website, Salespersons and advertisements that their vehicles were safe and backed by a warranty.

139.   Plaintiff brings this cause of action against Defendant under the theory of negligent misrepresentation for the following reasons:

       a.   Defendant, individually, and through their agents, representatives, distributors, and/or employees, negligently misrepresented material

facts about Mercedes- Benz's vehicles in that it made such misrepresentations when it knew or reasonably should have known of the falsity of such misrepresentations.

b.  Alternatively, Defendant made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

c.  The above misrepresentations were made to Plaintiff as well as the general public;

d.  Mercedes-Benz prides itself on providing safe vehicles. This claim is found throughout their websites. Plaintiff relied on this negligent misrepresentation and representation of Jim Dwyer.

e.  Consequently, Defendant's negligent misrepresentations proximately caused Plaintiff's injuries and monetary losses.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

a.  Defendant breached material terms of its promises to Plaintiff;

b.  Actual, compensatory, and consequential damages;

c.  In favor of Plaintiff and against and Mercedes-Benz, for compensatory damages for negligent misrepresentation;

d.  In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

    e.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

    f.   For other relief, the Court deems just and proper.

**COUNT III:**
**BREACH OF**
**IMPLIED WARRANTY OF MERCHANTABILITY**

140.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

141.   MBUSA at the time of placing Plaintiff and other Class Member vehicles into commerce had reason to know any particular purpose for which the goods are required and that the buyer was relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified, an implied warranty that the goods will be fit for such purpose.

142.   To recover for breach of an implied warranty of fitness for a particular purpose, a buyer must show (1) a sale of goods, (2) that the seller had reason to know of any particular purpose for which the goods are required, (3) that the buyer of goods was relying on the seller's skill or judgment in selecting the goods, and (4) that the goods did not fit the particular purpose for which they were used.

143.   Mercedes is a merchant with respect to the goods which it sold to Plaintiff and Class Members.

144.     The goods that Mercedes provided to Plaintiff and Class Members were unmerchantable at the time they were sold. Specifically, the Class Vehicles' sunroof was defective, rendering them not fit for ordinary use as automobiles, not able to pass without objection, not of fair average quality, and not conforming with promises and affirmations made.

145.     Mercedes' failure to provide merchantable vehicles was a breach of the implied warranty of merchantability, and Plaintiff and the other Class Members were damaged in an amount to be proven at trial.

146.     Based on the failure of the sunroof as described above, Mercedes-Benz breached the implied warranty of merchantability.

147.     As a result of Mercedes-Benz's breach of implied warranty of merchantability, Plaintiff and other class members have suffered damages.

148.     Defendant impliedly represented to Plaintiff and other class members that the sunroof was safe before Plaintiff purchased the vehicle.

149.     Defendant knew or should have known that their statements or actions were false or were made with reckless disregard for their truth or falsity and/or that their concealment of certain facts was material to Plaintiff's purchasing decision.

150.     Defendant intended for Plaintiff to rely on the false statements of material fact and/or concealment of material facts.

151.     To the extent Defendant's conduct was willful, wanton, and in utter disregard of the rights and interests of Plaintiff, Plaintiff is entitled to an award of punitive damages to deter the Defendant from engaging in similar conduct in the future.

152.     Mercedes-Benz concealed private and public information that their vehicles were unsafe and had a defective sunroof.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

    a.   Defendant breached material terms of its' promises to Plaintiff;

    b.   Actual, compensatory, and consequential damages;

    c.   In favor of Plaintiff and against, Mercedes-Benz, for compensatory damages for breach of a representation, warranties, and covenants;

    d.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

    e.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

    f.   For other relief, the Court deems just and proper.

## COUNT IV:
## EXPRESS WARRANTY

153.     Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

154.     The Uniform Commercial Code provides that an express warranty may be created by (a) an affirmation of fact or promise that is part of the basis of the bargain, (b) a description of the goods that is part of the basis of the bargain, or (c) a sample or model that is part of the basis of the bargain. 810 ILCS 5/2-313(1).

155. Defendant is a merchant and/or seller of Mercedes-Benz vehicles. Defendant sold their vehicles to consumers, including Plaintiff, for the ordinary purpose such vehicles may be used by consumers.

156. MBUSA is and was at all relevant times a "merchant" with respect to motor vehicles, and specifically the Class Vehicles, under, 810 ILCS 5/2-313(1) and "sellers" of motor vehicles, and specifically the Class Vehicles, under, and, with respect to leases, is and was at all relevant times a "lessor" of motor vehicles, and specifically the Class Vehicles, under, 810 ILCS 5/2-313(1).

157. The Class Vehicles are and were at all relevant times "goods" within the meaning of, inter alia, 810 ILCS 5/2-313(1). Plaintiff and Class Members bought or leased Class Vehicles manufactured, marketed to them, and intended to be purchased by consumers such as them, by Mercedes.

158. MBUSA expressly warranted the Class Vehicles against defects including the SUNROOF System Defect, as described above, within the meaning of, 810 ILCS 5/2-313(1).

159. MBUSA 's express warranties formed a basis of the bargain that was reached when Class Members purchased or leased their Class Vehicles.

160. As described above, the sunroof system in the Class Vehicles is defective. The sunroof system defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and Class Members.

161. MBUSA knew of the system defect, and that this defect poses serious safety risks to consumers like Plaintiff and Class Members, when it expressly warranted against

the defect, wrongfully and fraudulently concealed material facts regarding the defect,
failed to inform Class Members that the Class Vehicles had the defect, and induced
Plaintiff and Class Members to purchase or lease the Class Vehicles under false and/or
fraudulent pretenses.

162.    Specifically, Class Vehicles were sold to Plaintiff and Class Members with a
CPO vehicle 48-month and 50,000-mile express warranty.

163.    Plaintiff and Class Members were either in privity with MBUSA as original
purchasers or lessees, or otherwise afforded the benefits of the express warranty as
subsequent purchasers because the warranty itself states: "…warrants to the original and
each subsequent owner".

164.    MBUSA breached its express warranties by supplying the Class Vehicles to
Plaintiff and Class Members with the defective sunroof. MBUSA is obligated, under the
terms of its express warranties, to make repair and/or replacements to permanently
correct the sunroof system defect for Plaintiff and Class Members.

165.    Defendant made representations to Plaintiff about the quality or characteristics
of their vehicles by affirmation of fact, promise, and/or description. The representations
by Defendant became part of the basis of the bargain between Defendant and Plaintiff.

166.    Mercedes-Benz did not comport with the representations made by Defendant in
that it was not safe for the use for which it was marketed.

167.    In evaluating whether a representation was the basis of the bargain, the seller
need not have had specific intent to provide a warranty or used specific words such as
"warrant" or "guarantee." 825 ILCS 5/2-313(2). Illinois case law interpreting §2-313

contains conflicting statements about whether a buyer must demonstrate reliance on a seller's statement for it to be part of the basis of the bargain. While some cases examine a buyer's reliance, proof of reliance is not required to establish the existence of an express warranty. *Weng v. Allison*, 287 Ill.App.3d 535, 678 N.E.2d 1254, 1256, 223 Ill.Dec. 123 (3d Dist. 1997).

168.    Defendant knew or should have known that their statements and/or actions were false or were made with reckless disregard for their truth or falsity and/or that their concealment of certain fact was material to Plaintiff's purchasing decision.

169.    Defendant intended for Plaintiff to rely on the false statements and/or actions of material fact and/or concealment of material facts.

170.    Defendant had knowledge of the sunroof defect and therefore a duty to care existed.

171.    Plaintiff gave MBUSA a reasonable opportunity to cure its failures with respect to its warranties, and MBUSA failed to do so free of charge or at all.

172.    MBUSA breached its express warranties by failing to permanently repair the Class Vehicles and by failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it expressly warranted when it sold the Class Vehicles to Plaintiff and Class Members.

173.    To the extent, Defendant's conduct was willful, wanton, and an utter disregard of the rights and interests of Plaintiff, Plaintiff is entitled to an award of punitive damages to deter the Defendant from engaging in similar conduct in the future.

174.   This breach of duty by Defendant was a proximate cause of the injuries and monetary loss suffered by Plaintiff.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

a.   Defendant breached material terms of promises to Plaintiff;

b.   Actual, compensatory, and consequential damages;

c.   In favor of Plaintiff and against Mercedes-Benz for compensatory damages for breach of express warranty;

d.   In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

e.   For other relief, the Court deems just and proper.

## COUNT V:
## BREACH OF IMPLIED WARRANTY OF
## FITNESS FOR A PARTICULAR PURPOSE

175.   Plaintiff re-alleges, and incorporates by reference, the preceding paragraphs of this Complaint, as though fully set forth herein.

176.   Based on the failure of the sunroof to properly function in a safety matter, Mercedes-Benz breached the implied warranty that the vehicle sold to Plaintiff would be fit for the particular use.

177.   Plaintiff justifiably and relied on the aforementioned false representations and purchased a Mercedes-Benz vehicle from Napleton Motorwerks.

178.   Napleton Motorwerks is an authorized dealership of MBUSA.

179.   As a result of Mercedes-Benz's breach of the implied warranty of fitness for a particular purpose, Plaintiff has been damaged, incurred monetary losses, and will in the future pay for the replacement of the sunroof.

180.   As a result of Mercedes-Benz's breach of the implied warranty of fitness for a particular purpose, Plaintiff does not use his vehicle in the full capacity that it was intended.

181.   His trips are shorter, or he avoids using the vehicle. Plaintiff has suffered a loss in income as a part-time Uber driver. Since the fear of the sunroof exploding again, Plaintiff's uneasiness and inability to use the vehicle for its designed purposes, does not allow Plaintiff to work or enjoy his vehicle.

182.   Pickens and Ms. Tallie's use of the vehicle have changed dramatically since the explosion. They have difficulties focusing on the road and consistently worry will the Sunroof explode today.

183.   Plaintiff does not use the heat in the winter nor the air conditioning in the summer months due to the potential for the sunroof to explode due to the heat inside the vehicle and the cold pressure outside of the vehicle may cause the sunroof to explode-again.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

a.   Defendant breached material terms of promises to Plaintiff;

b.   Actual, compensatory, and consequential damages for breach of promises.

   c.  In favor of Plaintiff and against Mercedes-Benz for compensatory damages for breach of implied warranty of fitness for a particular purpose;

   d.  In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

   e.  For other relief, the Court deems just and proper.

<u>COUNT VI:</u>
<u>BREACH OF IMPLIED WARRANTY</u>

184.  Plaintiff incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

185.  During the Class Period, Mercedes-Benz designed, manufactured, and introduced the Class Vehicles for sale in the stream of commerce which Mercedes-Benz knew to be defective.

186.  Despite knowledge of the sunroof defect, Mercedes-Benz continued to place the defective vehicles in the stream of commerce.

187.  During the Class Period, Mercedes-Benz knew that potential consumers, including Plaintiff, were buying the Mercedes-Benz for the purpose of safe and reliable transportation.

188.  In selling the class vehicles to Plaintiff and Class members with the knowledge that the machines were defective, Mercedes-Benz warranted the vehicles were safe.

189.  The subject failure and shattering of Mercedes-Benz's sunroof during the Class Period has been well documented in the media and on the Internet; this sunroof is known to spontaneously explode.

190.   An Internet search for the terms "Mercedes-Benz roof shattering" provides a myriad of results relating to the sunroof's inability to perform as expected under normal conditions.

191.   A cursory Internet search result shows that the makers of Mercedes-Benz had factual evidence of the potential for serious injury or death and provided no solution, recall, or warning to the buyers and leasers of the vehicle. Instead, Mercedes-Benz remained steadfast in advising dealers that the cost would not be covered under warranty or other means, leaving the repair and costs, and any economic loss to the consumers.

192.   Prior to Plaintiff's sunroof exploding, Mercedes-Benz's headquarters were contacted concerning another MBUSA vehicle's sunroof that had unexpectedly exploded. Mercedes-Benz's executive stated that they never received a complaint concerning the sunroof explosion.

193.   Mercedes-Benz failed to recall their vehicles and/or advise potential consumers that the device may not operate as intended or expected.

194.   The failure of Mercedes-Benz vehicles to operate as intended constitutes a breach of the implied warranty of merchantability.

195.   Mercedes-Benz continues to conceal the source of the defect, any corrective measures to ensure public safety, and as such held and continues to hold vital information relating to the multitude of complaints made by the consumers.

196.   Defendant was at all times the designer, manufacturer, distributor, warrantor, or seller of the Mercedes-Benz vehicle at issue in this action. Defendant knew or should have known of the use for which the Mercedes-Benz vehicles were purchased. However,

the Mercedes-Benz vehicles were not fit for the ordinary purpose of providing reasonably safe transportation because the sunroof was defective and prone to spontaneous explosion, shattering, and/or cracking. This was an inherent defect at the time of sale or leasing of the Mercedes-Benz vehicles.

197.    Defendant impliedly warranted that the Mercedes-Benz vehicles were of merchantable quality and fit for such use. The implied warranty included, among other things; (1) a warranty that the Mercedes-Benz vehicles and the sunroof system manufactured, designed, supplied, distributed, and/or sold by Defendant was safe, reliable, and/or durable for providing transportation; and (2) a warranty that the Mercedes-Benz vehicles and the sunroof system would be fit for consumers' intended use while the Mercedes-Benz vehicles were being operated.

198.    Contrary to the applicable implied warranties, the Mercedes-Benz vehicles and the sunroof system, at the time of sale and thereafter, were not fit for ordinary and intended purpose of providing Plaintiff and Class members with reliable, durable, and safe transportation. Instead, the Mercedes-Benz vehicles were defective, including but not limited to, defective in the design and manufacture of the sunroof system.

199.    As a result of Defendant's breaches, Plaintiff and the Class members have suffered damages and are entitled to restitution, including but not limited to, any cost associated with fixing the sunroof, such as repair, and/or cost of inspection and/or replacement of a non-defective roof.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

a.  Defendant breached material terms of promises to Plaintiff;

b.  Actual, compensatory, and consequential damages;

c.  In favor of Plaintiff and against Mercedes-Benz for compensatory damages for breach of implied warranty;

d.  In favor of Plaintiff and against Mercedes-Benz for punitive damages;

e.  In favor of Plaintiff against Mercedes-Benz for attorney's fees and costs; and

f.  For other relief, the Court deems just and proper.

## COUNT VII:
## VIOLATION OF MAGNUSON-MOSS ACT

200.    Plaintiff incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

201.    The class vehicles are consumer products as defined in 15 U.S.C. § 2301(1).

202.    Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

203.    MBUSA is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

204.    MBUSA provided Plaintiff and class members with "written warranties" within the meaning of 15 U.S.C. § 2301(6).

205.    MBUSA breached the Express Warranty by refusing to honor the express warranty to replace or repair, free of charge, any defective vehicle component, including defects within the sunroof system.

206. At the time the class vehicles were sold, MBUSA knew of the defects they possessed and offered an Express Warranty with no intention of honoring said warranty with respect to the known defects.

207. Additionally, pursuant to 15 U.S.C. § 2304(d)(1), "the warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted product …."

208. At no time did MBUSA's offer a permanent or adequate repair or replacement of the sunroof system that would prevent further damages. Despite repeated demands by Plaintiff and Class Members that MBUSA pay for the labor and parts associated with fixing the sunroof defect, MBUSA has refused to do so. MBUSA's refusal to provide adequate repair or replacement and to pay for the installation violates 15 U.S.C. § 2304(d)(1).

209. Plaintiff afforded MBUSA a reasonable opportunity to cure their breach of the Express Warranty but failed to do so.

210. It took over 30 days for Plaintiff's vehicle to be properly fixed. MBUSA offered $250 to assist with the costs of repairs out of a "good faith" gesture.

211. In return for their "good faith" gesture, Plaintiff would have to sign a release waiver agreeing not to sue MBUSA.

212. Plaintiff's vehicle met the requirements of MBUSA certified pre-owned warranty but MBUSA refuses to honor the warranty and Plaintiff was obligated to pay the full amount for repairs.

213.   As a direct and proximate result of MBUSA's breach of their express written warranties, Plaintiff and Class Members suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against MBUSA after a jury trial that provides:

      a.   MBUSA violated 15 U.S.C. § 2304(d)(1);

      b.   Actual, compensatory, and consequential damages;

      c.   If appropriate, in favor of Plaintiff and against MBUSA for punitive damages in an amount to be determined at trial;

      d.   For other relief, the Court deems just and proper.

## COUNT VIII:
## UNJUST ENRICHMENT

214.   Plaintiff reasserts and incorporates the allegations of the preceding paragraphs of this Complaint as though fully alleged herein.

215.   Plaintiff brings this claim individually and on behalf of the proposed Class against Defendant.

216.   Mercedes-Benz, as the manufacturer, distributor, and/or seller represented that Mercedes-Benz is safe for consumers in its normal operation. However, many consumers have experienced dangerous operations when the vehicle's sunroof shatters during normal operation at high or low speed. Without offering repair of the vehicle, Mercedes-Benz unjustly enriches itself at the expense and safety of its very consumers.

217.     Accordingly, Mercedes-Benz has been unjustly enriched in retaining revenues derived from Plaintiff and the Class members' purchase of Mercedes-Benz vehicles under these circumstances. Mercedes-Benz's misrepresentations of their warranty and the safety standard of their vehicle caused Plaintiff and the Class harm and unjustly enriched Mercedes-Benz because Plaintiff and the Class would not have purchased Mercedes-Benz's vehicle or paid the price that they did, had the facts been known.

218.     MBUSA has been unjustly enriched by owners and lessees purchasing additional Sunroof glass from MBUSA and or its manufacturers.

219.     Mercedes-Benz has been unjustly enriched because owners have to pay out-of-pocket expenses to replace their defective sunroof.

220.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the Class as a result of these misrepresentations is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class.

221.     Plaintiff reasonably relied on these statements, which were intended to mislead Plaintiff.

222.     Defendant's fraudulent actions and statements were egregious and enticed Plaintiff that they reasonably induced Plaintiff to rely on their statements.

223.     Defendant had fraudulent intent and was aware that the sunroof was defective.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

    a.   Actual, compensatory, and consequential damages;

    b.   In favor of Plaintiff and against, Mercedes-Benz, for compensatory damages for unjust enrichment;

    c.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

    d.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

    e.   For other relief, the Court deems just and proper.

## COUNT IX:
## FRAUDULENT INDUCEMENT

224.   Plaintiff incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

225.   At the time of Plaintiff purchasing the vehicle, Mercedes-Benz knew there were defects in the sunroof, and the vehicle was not fit for the intended use.

226.   Mercedes-Benz intentionally failed to disclose the defects to the sunroof to Plaintiff and falsely represented that the vehicle was fit for use. Given its superior knowledge of sunroof and its recognition of the intended use of the vehicle, Defendant had a duty to disclose these defects to Plaintiff.

227.   The aforementioned omission and false representations were material to Plaintiff's decision to purchase a Mercedes-Benz vehicle. Plaintiff would not have purchased a Mercedes-Benz vehicle had he known of the defects in the vehicle or that the vehicle was not fit for use.

### A.  *Fraudulent Concealment Allegations*

Absent discovery, Plaintiff and Class Members are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mercedes responsible for disseminating false and misleading marketing materials and information regarding the Class Vehicles. Mercedes Benz is in possession of or has access to all of this information. Plaintiff's claims arise out of Mercedes' fraudulent concealment of the sunroof system defect and its representations about the quality, world-class quality, sophistication, state-of-the-art performance and comfort of the Class Vehicles' sunroof systems. To the extent that Plaintiff's claims arise from Mercedes's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims. Plaintiff alleges that at all relevant times, including specifically at the time he purchased or leased his Class Vehicle, Mercedes knew, or was reckless in not knowing, of the sunroof system defect; Mercedes was under a duty to disclose the defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it; and Mercedes never disclosed the defect to the Plaintiff or the public at any time or place or in any manner.

Plaintiff makes the following specific fraud allegations with as much specificity as possible although he does not have access to information necessarily available only to Mercedes:

a.                    ***Who*:** Mercedes actively concealed the sunroof system Defect from Plaintiff and Class Members while simultaneously touting the safety,

comfort, sophistication, and world-class quality of the Class Vehicles. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mercedes responsible for such decisions.

b.        **What**: Mercedes knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the sunroof system defect. Mercedes concealed the Defect and made contrary representations about the safety, comfort, sophistication, and world-class quality, and other attributes of the Class Vehicles, as specified above.

c.        **When**: Mercedes concealed material information regarding the Defect at all times and made representations about the world-class quality, sophistication, state-of-the-art safety and comfort of the Class Vehicles, starting no later than 2010, or at the subsequent introduction of certain models of Class Vehicles to the market, continuing through the time of sale/lease, and on an ongoing basis, and continuing to this day. Mercedes has not disclosed the truth about the defect in the Class Vehicles to anyone outside of Mercedes. Mercedes has never taken any action to inform consumers about the true nature of the defect in Class Vehicles. And when consumers brought their Class Vehicles to Mercedes complaining about the unexpected exploding of the sunroof, Mercedes denied any knowledge of or responsibility for the sunroof system defect, and in many instances, actually blamed owners/lessees and states a "rock" or another foreign object hit the sunroof.

d.        **Where**: Mercedes concealed material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class

Members and made contrary representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Mercedes disclosed the truth about the defect in the Class Vehicles to anyone outside of Mercedes. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Mercedes's website.

e.          ***How***: Mercedes concealed the sunroof system defect from Plaintiff and Class Members and made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Mercedes actively concealed the truth about the existence and nature of the defect from Plaintiff and Class Members at all times, even though it knew about the defect and knew that information about the defect would be important to a reasonable consumer and Mercedes promised in its marketing materials that Class Vehicles have qualities that they do not have.

f.          ***Why***: Mercedes actively concealed material information about the defect in Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality, sophistication, state-of-the-art safety, and comfort of the Class Vehicles. Had Mercedes disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (and reasonable consumers) would have been aware of it and would not have bought Class Vehicles or would have paid less for

them.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

a.        Actual, compensatory, and consequential damages;

b.   In favor of Plaintiff and against, Mercedes-Benz, for compensatory damages for fraudulent inducement;

c.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

d.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

e.   For other relief, the Court deems just and proper.

### COUNT X:
### BREACH OF WARRANTY

228.   Plaintiff incorporates by reference the allegations set forth in the paragraphs above as if fully set forth herein.

229.   Under Mercedes-Benz "New Vehicle Warranty Coverage Documents" http://extendedlimitedwarranty.mercedesbenzofaustin.com/new-vehicle-warranty-coverage-documents, Defendant, Mercedes-Benz, claims its warranty extends to consumers and "that any authorized Dealer will make repairs or replacements necessary at no charge to correct defects in material or workmanship on any vehicle parts and/or systems."

230.   Under Mercedes-Benz Certified Pre-Owned "Every Certified Pre-Owned Mercedes-Benz is covered by any remaining portion of the Mercedes-Benz four-

year/50,000 mile New Vehicle Limited Warranty. Then, the CPO Limited Warranty

provides comprehensive coverage for another 12 months with unlimited miles. This

means up to 5 years of unlimited mileage coverage." **EXHIBIT C.**

> *Applies to Certified Pre-Owned Mercedes-Benz vehicles purchased on or after
> January 15, 2014. Please see your dealer for full details, limitations, and a copy of
> the Mercedes-Benz Certified Pre-Owned Limited Warranty and available
> Extended Limited Warranty.

231.    As a direct and proximate result of Mercedes-Benz's breach of warranty,

Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and

against Defendant after a jury trial provides:

a.        Actual, compensatory, and consequential damages;

b.   In favor of Plaintiff and against, Mercedes-Benz, for compensatory damages for

breach of warranty;

c.   In favor of Plaintiff and against the Defendant for punitive damages in an amount

to be determined at trial;

d.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

e.   For other relief, the Court deems just and proper.

## COUNT XI:
## STRICT PRODUCT LIABILITY

232.    Plaintiff incorporates by this reference the allegations set forth in the

paragraphs above as if fully set forth herein.

233.   Defendant introduced class vehicles into the stream of commerce that were defective and unreasonably dangerous and unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing; adequate testing would have shown that the panoramic glass was unsafe for Mercedes-Benz vehicles. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the vehicles.

234.   As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial provides:

a.        Actual, compensatory, and consequential damages;

b.   In favor of Plaintiff and against Mercedes-Benz for compensatory damages for strict liability;

c.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

d.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

e. For other relief, the Court deems just and proper.

**COUNT XII:**
**STRICT PRODUCT LIABILITY**
*Pursuant to Restatement Second of Torts 402a (1965)*

235.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

236.    Restatement (2d) of Torts §402a states:"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

237.    Defendant manufactured and/or distributed class vehicles that were unaccompanied by proper warnings regarding all possible adverse side-effects when they left the hands of the manufactures and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design.

238.    Alternatively, Defendant introduced class vehicles into the stream of commerce knowing that they were defective in design or formulation. When the class vehicles left the hands of the manufacturers and/or suppliers and/or distributors, they were unreasonably defective and more dangerous than an ordinary consumer would expect.

239.   There existed, at all times material hereto, safer alternatives. Defendant neglected their duty to care for the safety of the public at large and consumers by ignoring the defect and as such is the proximate cause of all damages.

240.   Defendant did not perform adequate testing upon their vehicles. Adequate testing would have revealed that Mercedes-Benz's vehicle had an egregious defect that caused harm and damages to its consumers and potentially others.

241.   Defendant manufactured, designed, marketed, distributed, and/or sold class vehicles that were unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Mercedes-Benz vehicles.

242.   Defendant did not warn customers of material facts regarding the safety and efficacy of Mercedes-Benz vehicles, which facts Defendant knew or should have known.

243.   The class vehicles that the Defendant manufactured and/or distributed were defective due to inadequate post-marketing warning or instruction because Defendant failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

244.   As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured and/or supplied and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial that provides:

        a.   Actual, compensatory, and consequential damages;

b. In favor of Plaintiff and against, Mercedes-Benz for compensatory

damages for Restatement Second of Torts 402a (1965);

c. In favor of Plaintiff and against the Defendant for punitive damages

in an amount to be determined at trial;

d. In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and

costs; and

e. For other relief, the Court deems just and proper.

## COUNT XIII:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

245.    Plaintiff incorporates by this reference the allegations set forth in the

paragraphs above as if fully set forth herein.

246.    Defendant's conduct by supplying a defective sunroof that is prone to

exploding unexpectedly is extreme and outrageous. (2) Defendants have been aware of

this issue for several years and have received complaints from MBUSA drivers. In 2019,

MBUSA settled with the National Highway Traffic Safety Administration for a $20

million settlement for recall issues **EXHIBIT D.** The shattering of Plaintiff's sunroof

caused severe emotional distress. Plaintiff is fearful to drive his vehicle every day.

Plaintiff is tensed when he drives even short distances and he tries to void driving as

much as possible.

247.    Ms. Tallie nor Mr. Pickens can anticipate when the sunroof will shatter again

and causes undue stress and anxiety on a consistent basis.

248.   Plaintiff is unable to fully enjoy his premium vehicle and when Mr. Pickens or Ms. Tallies does drive the vehicle, they cannot fully enjoy the usage of the sunroof because they have to drive with the sunroof and mesh liner closed.

249.   In each driving experience, Mr. Pickens and Ms. Tallie have intense anxiety.

250.   On the day of the incident, Ms. Tallie suffered extreme emotional distress. At the moment of impact, Ms. Tallie believed that she was being shot at.

251.   The acts, omission, and representations of Defendant regarding the manufacturing, distribution, and marketing of Mercedes-Benz as described in the foregoing paragraphs were intentional, reckless, extreme, and outrageous. Defendant intentionally engaged in extreme and outrageous conduct when they intentionally and/or recklessly marketed Mercedes-Benz and then intentionally and/or recklessly concealed material information about Mercedes-Benz's potential serious adverse effects to Plaintiff.

252.   Defendant knew that Plaintiff would suffer mental distress and anxiety upon experiencing an unexpected shattering of the panoramic sunroof. Furthermore, Defendant knew that catastrophic events could cause or possess a likelihood of serious adverse effects and possible life-threatening injuries.

253.   As a result of Defendant's misconduct, Plaintiff sustained and will continue to sustain emotional,  mental distress, and anxiety.

254.   Mercedes-Benz manufactured, and/or distributed, and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because Defendant failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

255.    As the proximate cause and legal result of the defective condition of Mercedes-Benz's vehicles as manufactured, and/or supplied, and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial provides:

a.        Actual, compensatory, and consequential damages;

b.   In favor of Plaintiff and against, Mercedes-Benz, for compensatory damages for intentional infliction of emotional distress;

c.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

d.   In favor of Plaintiff against, Mercedes-Benz, for attorney's fees and costs; and

e.   For other relief, the Court deems just and proper.

## COUNT XIV:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

256.    Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

257.    Defendant negligently and carelessly manufactured, sold, and distributed Mercedes-Benz to Plaintiff which was defective.

258.    Defendant negligently and carelessly concealed the defective nature of Mercedes-Benz from Plaintiff.

259.    Defendant negligently and carelessly misrepresented the usefulness, quality, and safety of Mercedes-Benz to Plaintiff,

260.   Defendant's negligence and care carelessness directly impacted Plaintiff in that Plaintiff was induced to purchase the defective and dangerous Mercedes-Benz vehicles.

261.   As a direct result of Defendant's misconduct alleged herein, Plaintiff has suffered and will continue to suffer emotional and mental distress and anxiety from the fear of knowing there is a likelihood of serious adverse effects and complications of Mercedes-Benz vehicles.

262.   Mercedes-Benz manufactured and/or distributed and/or supplied by Defendant was defective due to inadequate post-marketing warning or instruction because Defendant failed to provide adequate warning to users or consumers of Mercedes-Benz and continued to aggressively promote Mercedes-Benz.

263.   As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured, and/or supplied, and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial provides:

a.      Defendant breached material terms of promises to Plaintiff;

b.      Actual, compensatory, and consequential damages;

c.   In favor of Plaintiff and against, Mercedes-Benz and for compensatory damages for negligent intentional infliction of emotional distress;

d.   In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

e.   In favor of Plaintiff against, Mercedes-Benz and   for attorney's fees and costs; and

f.   For other relief, the Court deems just and proper.

## COUNT XV:
## NEGLIGENCE

264.   Plaintiff incorporates by this reference the allegations set forth in the paragraphs above as if fully set forth herein.

265.   Defendant owed Plaintiff legal duties in connection with its development, manufacture, and distribution of Mercedes-Benz vehicles. Defendant breached those duties, proximately causing Plaintiff's injuries. Specifically, Defendant failed to meet their duty to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Mercedes-Benz. Defendant isis liable for acts and/or omissions amounting to negligence, gross negligence, and/or malice including, but not limited to the following:

a.   Failure to adequately warn Plaintiff of the known or reasonably foreseeable danger that Plaintiff would suffer a serious injury or death by using BSA vehicles;

b.   Failure to use reasonable care in testing and inspecting Mercedes-Benz to ascertain whether or not it was safe for which the vehicle was designed, manufactured, and sold;

c.   Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Mercedes-Benz;

    d. Failure to use reasonable care in the process of manufacturing Mercedes-Benz in a reasonably safe condition for the use for which it was intended;

    e. Failure to use reasonable care in the manner and method of warning Plaintiff as to the danger and risks of using Mercedes-Benz; and

    f. Such further acts and/or omissions may be proven at trial.

266. The above-described acts/or omissions of Defendant were a direct and proximate cause of defects occurring on the vehicle during normal use and while not in use.

267. As the proximate cause and legal result of the defective condition of Mercedes-Benz as manufactured, and/or supplied, and/or distributed by Defendant, and as a direct and legal result of the conduct of Defendant described herein, Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial provides:

    a. Actual, compensatory, and consequential damages;

    b. In favor of Plaintiff and against Defendant for compensatory damages for negligence;

    c. In favor of Plaintiff and against the Defendant for punitive damages in an amount to be determined at trial;

    d. In favor of Plaintiff and against Defendant for attorney's fees and costs; and

    e. For other relief, the Court deems just and proper.

## COUNT XVI:
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT

268.   Plaintiff re-alleges and re-asserts every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

269.   According to 815 ILCS 502/2, unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, or misrepresentation, with the intent that others rely upon the concealment, suppression, or omission of such material fact, in the conduct of any trade or commerce, are hereby declared unlawful. See 815 ILCS 505/2.

270.   Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The Court, in its discretion, may award actual economic damages or any other relief that the Court deems proper. See 815 ILCS 505/10a.

271.   Plaintiff, Class Members, MBUSA, and are "persons" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act.

272.   c) The term "person" includes any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof.

273.   Plaintiff and Class Members are "consumers" within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFA").

274.   The IFCA creates a duty on sellers forbidding them from knowingly hiding the defects of a vehicle. The IFCA creates a duty not present in the common law to disclose all known defects to a consumer. *Miller v. William Chevrolet/GEO, Inc.*, 326 Ill. App. 3d 642, 658 (1st Dist. 2001).

275.   The Act generally does require that sellers engaged in trade or commerce disclose any material facts to consumers, regardless of the existence of a common law duty."; *Totz*, 236 Ill. App. 3d at 903. Under the ICFA, "a used car dealer that conceals, suppresses, or fails to disclose a material fact to a consumer violates section 2 of the Act if the dealer intended the consumer to rely upon the concealment, suppression, or omission." *Id.*

276.   The elements of a claim under ICFA are (1) deceptive conduct; (2) that the defendant intended the plaintiff rely on that conduct; (3) that the deception occurred in the course of conduct involving a trade or commerce; and (4) damages proximately resulting from the deception.

277.   At all relevant times material hereto, Mercedes conducted trade and commerce in Illinois and elsewhere within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act. Mercedes participated in misleading, false, or deceptive acts that violated the Illinois CFA. By failing to disclose and actively concealing the dangers and risks posed by the Defective Sunroof, Mercedes engaged in deceptive business practices prohibited by the ICFA.

278.   In the course of their business, Mercedes failed to disclose and actively concealed the problems, and risks posed by the defective sunroof installed in Class

Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

279.   Mercedes has engaged in unlawful, deceptive practices in the sale of the defective sunroof in the Class Vehicles as alleged in more detail elsewhere herein, including: (1) selling the sunroof system despite knowing it would fail and/or malfunction and that Mercedes was unable or unwilling to remedy the failure; and (2) failing to disclose and/or concealing this known defect.

280.   Mercedes knew of the sunroof defect prior to the sale/lease of the Class Vehicles, and likely as early as 2010.

281.   Mercedes knowingly and intentionally omitted and failed to disclose material facts to Plaintiff and Class Members with respect to the sunroof system defect, including the fact that, with normal use, the sunroof system would fail and/or malfunction as described elsewhere herein, and/or denying and/or misleading them as to the true cause and remedy of the defect.

282.   MBUSA failed to disclose the defective sunroof and defective design of the Class vehicles to the Plaintiff and Class Members.

283.   MBUSA was put on notice of the defect at least 10 years ago and definitely when Plaintiff purchased his vehicle.

284.   Mercedes intended to deceive Plaintiff and Class Members and intended that Plaintiff and Class Members rely on Mercedes' misrepresentation, omissions, and acts of concealment so that Plaintiff and Class Members would purchase or lease the sunroof system and Class Vehicles at a substantial out-of- pocket cost to them.

285. During the Class Period, Mercedes-Benz designed and manufactured luxury vehicles, which were known to be defective.

286. As a result of the defect, members of the Class have experienced malfunctions with their Mercedes-Benz vehicles' sunroof.

287. Before the time Plaintiff purchased his Mercedes-Benz vehicle, Mercedes-Benz concealed, suppressed, and/or omitted from the public that their vehicles were defective, with the intent that such suppression would cause the consumer to rely on the concealment to purchase the vehicles in the stream of commerce.

288. Before and during, Mercedes-Benz concealed, suppressed, and/or omitted from the public that their vehicles contained a defective roof glass and system, with the intent that such suppression would cause the consumer to rely on the concealment to purchase the vehicles in the stream of commerce. Mercedes Benz was fully aware of the sunroof recall and defects. ***Exhibits A, B, and D.***

289. Plaintiff relied on the defective representations of the Class vehicles. He relied on MBUSA advertisement concerning the safety of their vehicle, Napleton's salesperson statements, MBUSA's certified pre-owned warranty that the vehicle was safe and if a defect occurred with its vehicles, Mercedes Benz warrants it.

290. Mercedes-Benz produces vehicles for sale in the stream of commerce.

291. Despite Mercedes-Benz's knowledge of the defect, during the Class Period, Mercedes-Benz refused to inform consumers of the defect-a material fact and/or issue a recall of their vehicles.

292.   The unfair and deceptive practice of failing to disclose the defect inherent to the vehicles had an impact on public interest because the alleged acts were committed in the course of Mercedes-Benz's business and advertised to the general public. Therefore, Plaintiff and members of the Class occupy positions of bargaining power unequal to that of Mercedes-Benz.

293.   Mercedes knew or should have known that its conduct violated ICFA.

294.   As alleged above, Mercedes made material statements about the quality and reliability of the Class Vehicles and/or the Defective Sunroof installed in them that were either false or misleading. Mercedes' representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as "sophisticated" and "comfortable", despite their knowledge of the Defective Sunroof or their failure to reasonably investigate it.

295.   By refusing to inform Plaintiff of the defect, and any others within the Class, Mercedes-Benz continues to suppress the nature of the defect.

296.   Had Plaintiff and members of the Class been informed of the defect inherent to the Mercedes-Benz consoles, neither Plaintiff nor members of the Class would have purchased their Mercedes-Benz vehicles.

297.   As a result of Mercedes-Benz's unfair or deceptive practice, Plaintiff and member of the Classes were damaged and experienced monetary damages, actual damages, mental and emotional anguish, and lost wages.

       a.   WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant after a jury trial provides pursuant

to 815 ILCS 505/10a(a), Plaintiff and Class Members seek

monetary relief against Defendant in the number of actual damages,

as well as punitive damages;

b.  Plaintiff also seeks an order enjoining Mercedes' unfair and/or

deceptive acts or practices, punitive damages, and attorneys' fees,

and any other just and proper relief available under 815 ILCS §

505/1 *et seq.* Actual, compensatory, and consequential damages;

c.  In favor of Plaintiff and against, Mercedes-Benz, for compensatory

damages for violation of the Illinois Consumer Fraud and Deceptive

Business Practices Act;

d.  and For other relief, the Court deems just and proper.

## <u>COUNT XVIII:</u>
## <u>BREACH OF IMPLIED WARRANTY – MAGNUSON-MOSS WARRANTY ACT</u>

260.  Plaintiff re-alleges and re-asserts every allegation contained in the above

paragraphs of this Complaint as if fully set forth herein.

261.  Plaintiff and Class Members are consumers as defined in 15 U.S.C § 2301(3).

262.  Defendant MBUSA is a supplier and warrantor as defined in 15 U.S.C §§

2301(4) and (5). The term "<u>supplier</u>" means any person engaged in the business of

making a <u>consumer product</u> directly or indirectly available to <u>consumers.</u>

263.  The subject class vehicles are consumer products as defined in 15 U.S.C §

2301(1). The term "<u>commerce</u>" means trade, traffic, <u>commerce</u>, or transportation—

264.   MBUSA extended an implied warranty to Plaintiff and Class Members by operation of 15 U.S.C § 2301(7), and this implied warranty covers defects in class vehicles and its class vehicles' sunroof systems.

265.   MBUSA's vehicle that Plaintiff and other Class Members purchased was not fit to be driven due to the safety issues of the Sunroof.

266.   Plaintiff's vehicle is undrivable due to the possibility of the Sunroof exploding again. Plaintiff cannot fully use his vehicle in its full capacity.

267.

268.   MBUSA breached this implied warranty by selling its class vehicles with defective sunroof systems that were neither merchantable nor fit for their intended purpose.

269.   MBUSA extended an implied warranty to Plaintiff and Class Members by operation of 15 U.S.C § 2301(7), and this warranty extends to the subject Class Vehicles' sunroof systems.

270.   MBUSA breached this implied warranty by selling Class Vehicles that were neither merchantable nor fit for their intended purpose.

271.   As a direct and proximate result of MBUSA's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant MBUSA after a jury trial that provides:

   a.   MBUSA breached its implied warranty;

    b.   Actual, compensatory and consequential damages;

    c.   In favor of Plaintiff and against MBUSA for punitive damages in an amount to be determined at trial;

    d.   In favor of Plaintiff and against MBUSA for attorney's fees and costs; and

    e.   For other relief, the Court deems just and proper.

## COUNT XIX:
## Violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1, *et seq.*

269.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

270.    Illinois' Uniform Deceptive Trade Practices Act ("Illinois UDTPA"), 815 ILCS 510/2, prohibits deceptive trade practices, including among others, "(2) caus[ing] likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (2) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; (3) represent[ing] that goods or services are of a particular standard, quality, or grade——if they are of another; (4) advertis[ing] goods or services with intent not to sell them as advertised; [and] (5) engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

271.    Defendant is a "person" as defined in 815 ILCS 510/1(5). **"Person"** means an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association, 2 or more of any of the foregoing having a joint or common interest or any other legal or commercial entity;

272.    In the course of Defendant's business, Mercedes failed to disclose and actively concealed the sunroof defect in the Class Vehicles. Mercedes engaged in deceptive trade

practices as defined in 815 ILCS 510/2, including representing that the Class Vehicles and/or the defective sunroof installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and otherwise engaging in conduct likely to deceive.

273.    Mercedes intended for Plaintiff and Class Members to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.  Mercedes' actions as set forth below and above occurred in the conduct of trade or commerce.

274.    Mercedes' conduct proximately caused injuries to Plaintiff and Class Members.

275.    Plaintiff and Class Members were injured as a result of Defendant's conduct in that Plaintiff and Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.

276. The defective sunroof has decreased the Class Vehicle by a significant amount.

260.    MBUSA practices caused confusion and/or misunderstanding concerning the certification of their product.

261.    When Plaintiff purchased a pre-owned MBUSA vehicle, he was under the impression that since he purchased his vehicle from a Licensed MBUSA dealership and the vehicle was certified pre-owned that it had met the rigorous standards of MBUSA, that the vehicle was safe. This was untrue.

262.    Plaintiff and Class Members were deceived by Defendant's digital and print advertisements that he saw that stated Mercedes Benz's vehicles were

safe and under warranty. Plaintiff viewed Mercedes Benz's website and Napleton's website and that also stated the vehicle was under warranty.

263. Plaintiff not only cannot fully use his vehicle, but he has also paid several thousands of dollars for the repairment of his defective sunroof.

264. These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

276.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant MBUSA after a jury trial that provides:

    a. MBUSA violated the Illinois Uniform Deceptive Trade Practices Act 815 ILCS 510/1;

    b. Plaintiff seeks an order enjoining Mercedes' deceptive practices, attorneys' fees;

    c. Actual, compensatory and consequential damages;

    d. In favor of Plaintiff and against MBUSA for punitive damages in an amount to be determined at trial; and

    e. For other relief, the Court deems just and proper.

## COUNT XX:
## FAILURE TO WARN

260. Plaintiff re-alleges and re-asserts every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

261. The defendant was the manufacturer/distributor/retailer of the sunroof "product".

262. Use of the product in a manner reasonably foreseeable to the manufacturer involves a substantial danger that would not be readily recognized by the ordinary user of the product.

263. The manufacturer knew or should have known, of the danger given the generally recognized and prevailing scientific knowledge available at the time of the manufacture and distribution.

264. 64. The defendant failed to provide an adequate warning against the danger created by the reasonably foreseeable use, i.e., defendant failed to adequately warn against the specific risk of harm created by the danger.

265. The defendant failed to provide adequate instruction to avoid the danger; The injury would not have occurred if adequate warning and instruction had been provided.

266. The injury resulted from the use of the product that was reasonably foreseeable to the defendant.

267. A manufacturer has a duty to warn of an automobile's dangerous propensities if: (i) the automobile is dangerous, (ii) the manufacturer knew or should have known of the danger, and (iii) the danger is neither obvious nor known to the user. Generally, there is no duty to warn of obvious danger.

268. A warning must notify the user of possible consequences of the use or foreseeable misuse of an automobile.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant MBUSA after a jury trial that provides:

a. MBUSA failed to inform Plaintiff and Class Members of the sunroof's defective design;

b. Actual, compensatory and consequential damages;

c. In favor of Plaintiff and against MBUSA for punitive damages in an amount to be determined at trial;

d. In favor of Plaintiff and against MBUSA for attorney's fees and costs; and

e. For other relief, the Court deems just and proper.

## COUNT XXI:
## FAILURE TO INSPECT

260. Plaintiff re-alleges and re-asserts every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

261. Defendant did not properly inspect the Class Vehicles prior to placing the vehicles into the stream of commerce.

262. Had MBUSA properly inspected the vehicles, it would have noticed a design defect with the vehicle and or its sunroof.

263. Even after NHSTS ordered a recall of MBUSA's vehicles for the sunroof defect, MBUSA failed to inspect Plaintiff's 2015 vehicle and other Class Vehicles.

264. Due to MBUSA's failure to inspect it has caused injury and damages to Plaintiff and Class Members.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant MBUSA after a jury trial that provides:

a. MBUSA failed to inspect Plaintiff and the Class Vehicle;

b. Actual, compensatory and consequential damages;

c.   In favor of Plaintiff and against MBUSA for punitive damages in an

amount to be determined at trial;

d.   In favor of Plaintiff and against MBUSA for attorney's fees and costs; and

e.   For other relief, the Court deems just and proper.


**COUNT XXII:**
**DUTY TO WARN**

260. Plaintiff re-alleges and re-asserts every allegation contained in the above

paragraphs of this Complaint as if fully set forth herein.

261. MBUSA failed to exercise reasonable care in its product design embraces a

"balancing of the risks inherent in the product design with the utility of benefit

derived from the product." Under the risk-utility test. "[T]he risk is

unreasonable and the act is negligent if the risk is of such magnitude as to

outweigh what the law regards as the utility of the act or of the particular

manner in which it is done." While many and varied factors comprise the test,

the two primary factors are 1) the availability of feasible alternate designs at

the time of manufacture, and 2) that the design used did not conform to

industry standards, authoritative voluntary organizations, or criteria set forth in

regulations.

262. A manufacturer has a duty to adequately warn and instruct the consumer/user

about the dangers of its product of which it knew, or, in the exercise of

ordinary care, should have known, at the time the product left the

manufacturer's/other's control. *Woodill v. Parke Davis & Co.*, 79 Ill. 2d 26, 35, 402 N.E.2d 194 (1980).

263. A manufacturer has a duty to warn when the product possesses dangerous propensities, there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning. Sollami v. Eaton, 201 Ill. 2d 1, 7, 772 N.E.2d 215, 265 Ill.Dec. 177 (2002). A manufacturer, reasonably aware of a dangerous propensity of its product, has a duty to warn foreseeable users when there is unequal knowledge, actual or constructive, and it knows or should know that harm might or could occur if no warning is given. Modelski v. Navistar International Transportation Corp., 302 Ill. App. 3d 879, 877, 707 N.E.2d 239, 236 Ill.Dec. 394 (1st Dist. 1999).

264. MBUSA has a duty to warn exists that its sunroof is susceptible to unexpected and unexplained shattering.

265. MBUSA is aware and has been aware of this condition since 2010. MBUSA has the knowledge, actual or constructive, of a dangerous condition, and the defendant, possessed of such information, knows or should know that harm might or could occur if no warning is given. (*Please see Exhibits A, B, C, and D*).

266. MBUSA was aware of this defect through various means including previous lawsuits, consumer complaints, online searches, and consumer complaints, vehicle owners and lessees contacting MBUSA's headquarters and MBUSA's

dealerships contacting headquarters and owners and lessors of MBUSA contacting headquarters.

267. MBUSA did not provide any warnings but continued to market their vehicles and place the vehicles into the stream of commerce.

268. If MBUSA would have provided warnings of the defective sunroof, Plaintiff and Class Members would not have purchased any of MBUSA's vehicles.

269. A duty to warn is not required where the possibility of injury results from the common propensity of the product which is open and obvious.

270. By inspecting the interior and exterior of Plaintiff's vehicles and other MBUSA vehicles, it is impossible for a layperson to determine that there is a sunroof defect.

WHEREFORE, Plaintiff prays that this Court enters judgment on his behalf and against Defendant MBUSA after a jury trial that provides:

a. MBUSA failed to warn customers of its defective sunroof;

b. Actual, compensatory and consequential damages;

c. In favor of Plaintiff and against MBUSA for punitive damages in an amount to be determined at trial;

d. In favor of Plaintiff and against MBUSA for attorney's fees and costs; and

e. For other relief, the Court deems just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a jury trial on all issues so triable herein pursuant to Rule 38 of the Federal Rules of Civil Procedure.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an Order certifying the Class under Rule 23 of the Federal Rules of Civil procedure and naming Bruce Pickens as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent members of the Class and Subclass;

b. For an Order declaring that Defendant' conduct violates the statutes referenced herein;

c. For an Order declaring that Defendant' conduct violates the common law provisions referenced herein;

d. For an Order finding in favor of Plaintiff and the Class on all counts alleged herein;

e. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f. For pre-judgment interest on all amounts awarded to the full extent allowed by law;

g. For injunctive relief as pleaded or as the Court may deem proper;

h. For an Order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses to the full extent allowed by law; and

i.   For other relief, the Court deems just and proper.

Respectfully Submitted,

/s/Maudia Washington
Washington Law Offices, P.C
Attorney for PLAINTIFF
401 W. State Street
Suite 501
Rockford, IL 61101
maudia@ilwashingtonlaw.com
Telephone: 888.586.4441