# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRUCE PICKENS,

        Plaintiff,

        v.

MERCEDES-BENZ USA, LLC,

        Defendant.

No. 20 C 3470

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

Bruce Pickens alleges the sunroof window in his Mercedes-Benz car spontaneously shattered. He brings various claims against Mercedes-Benz USA, LLC seeking relief for that incident. Mercedes has moved to dismiss all claims. R. 49. That motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

In November 2019, Pickens bought a used 2015 Mercedes-Benz ML350 from Napleton Autowerks of Indiana. When new, the car came with a four-year New Vehicle Limited Warranty. When sold to Perkins, the car came with an additional 12-month Certified Pre-Owned Warranty.

On March 3, 2020, Pickens's sister Jawanna Tallie was driving the car on an expressway. She heard a loud sound like a gunshot and pulled the car over to the side of the road. She inspected the car's exterior but found no damage. When she got back in the car, the sunroof window shattered and collapsed into the car.

Pickens alleges that Mercedes "received other complaints concerning the unexpected and sudden explosion of its sunroof prior to [Pickens's] sunroof exploding." R. 48 ¶ 10. None of these complaints concerned the model of car Pickens purchased.

He also alleges that in January 2020, "Mercedes received a sunroof recall notification from the National Highway Traffic Safety Administration." *Id.* The NHTSA notice stated that the "bonding between the glass panel and the sliding roof frame may deteriorate, possibly resulting in the glass panel detaching from the vehicle," and thereby "becom[ing] a road hazard." R. 48-2 at 2. The notice does not mention spontaneous shattering and is not addressed to the model of car Pickens purchased.

Pickens alleges that the sunroof shattered due to a "design defect." R. 48 ¶ 4; *see also id.* ¶ 11 (alleging "unexpected sunroof explosion due to design defect of . . . sunroofs"); *id.* ¶ 21 ("Upon information and belief, [Mercedes] was solely responsible for designing the Class Vehicles, including their defective sunroof systems. It is therefore an essential party to this action concerning a design defect in the Class Vehicles' sunroof systems."). Although not alleged in the complaint, Pickens states in his brief that Mercedes "used ceramic paint or enamel on the glass before tempering," which "makes them prone to spontaneously bursting." R. 53 at 3.

Pickens's complaint includes 21 counts.[1] Some of the counts are duplicative or overlap so they can be analyzed in eight groups: (1) express warranty claims (Counts I, IV, VII, X); (2) implied warranty claims (Counts III, V, VI, XVIII); (3) fraud claims (Counts IX, XVI); (4) negligence claims (Counts II, XIV, XV, XXI); (5) intentional infliction of emotional distress (Count XIII); (6) Illinois Uniform and Deceptive Trade

---

[1] The count captions go up to 22, but Pickens skipped count 17.

Practices Act (Count XIX); (7) failure and duty to warn (Counts XX, XXII); and (8) unjust enrichment (Count VIII).[2]

## Analysis

### I.    Express Warranties

Pickens alleges two express warranties: (1) the four-year warranty that came with the car when it was new (attached to Mercedes's brief at R. 50-1); and (2) the 12-month extension that came with the car when it was re-sold (attached to Mercedes's brief at R. 50-2). Pickens alleges that the sunroof for his car and other Mercedes cars like his "have one or more serious design defects." R. 48 ¶ 4. Both warranties, however, cover only "defects in material or workmanship." R. 50-1 at 14 (p. 11); R. 50-2 at 9. The Seventh Circuit has held that warranties for "material and workmanship" do not cover design defects. *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 520, 527 (7th Cir. 2003) (affirming district court's dismissal of express warranty claim for a design defect when the warranty covered only "defect[s] in material or workmanship"); *see also Coba v. Ford Motor Co.*, 932 F.3d 114, 122 (3d Cir. 2019) ("[C]ourts have regularly rejected arguments . . . that a design defect is within the scope of a materials-and-workmanship warranty clause[.]" (citing cases)); *Shea v. General Motors*, 2021 WL 4804171, at *3 (N.D. Ind. Oct. 14, 2021) (citing cases).

---

[2] Pickens "withdrew" the two strict liability counts, *see* R. 53 at 9, so Counts XI and XII are dismissed.

Additionally, both warranties exclude "glass." *See* R. 50-1 at 19 (p. 16); R. 50-2 at 13. Thus, Pickens has no claim under either of the express warranties.[3]

Pickens also argues in his brief that Mercedes's advertisements and oral statements by Napleton's salesperson constitute express warranties that support his claims. The problem with this argument is that Pickens does not allege any specific promises made in the advertisements or by the salesperson. The complaint does not describe any statements by the salesperson and Pickens expressly alleges that he "does not recall the specifics of the many Mercedes advertisements he saw." R. 48 ¶ 38. Pickens merely argues that the advertisements and the salesperson assured him that Mercedes cars are "of superior quality and the highest safety standards." R. 53 at 11. But "assertions to customers that their products are of high quality . . . are viewed as 'puffing,' rather than express warranties." *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *7 (N.D. Ill. June 16, 2015) (citing cases); *see also In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2014 WL 7365872, at *8 (N.D. Ill. Dec. 23, 2014) ("To state a claim for breach of express warranty . . . plaintiffs must point to a specific affirmation or promise on which the plaintiffs relied.").

Furthermore, as a "general rule, a dealer is not an agent for manufacturers of the products it sells." *Carlisle v. Deere & Company*, 576 F.3d 649, 656 (7th Cir. 2009);

---

[3] Mercedes contends that the new car warranty expired before the sunroof glass broke. The car was a 2015 model, which means it was likely available for sale in 2014, and the glass didn't break until March 2020. But the warranty did not start until "the date of retail delivery or initial operation as an authorized Mercedes-Benz center demonstrator or Mercedes-Benz . . . company vehicle." R. 50-1 at 16. The complaint does not allege when the warranty took effect, so the Court cannot know for certain whether the warranty was expired when the glass broke.

*Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1026 (7th Cir. 1993) (without more, a distributor who buys goods from a manufacturer for resale to the public is not the supplier's agent). Pickens conclusorily alleges that Napleton is Mercedes's agent. But he does not give any reason why Napleton's relationship with Mercedes is more than a routine dealer relationship that generally does not give rise to agency. *See*, *e.g.*, *Hyundai Motor Am., Inc. v. Goodin*, 804 N.E.2d 775, 787 (Ind. Ct. App. 2004) (finding that a routine car dealer/car manufacturer relationship does not make the dealer an agent of the manufacturer for purposes of the privity requirement). This is another reason that Pickens express warranty claims against Mercedes based on Napleton's statements must be dismissed.

## II.    **Implied Warranties**

In Illinois, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Voelker*, 353 F.3d at 525. This means that "a buyer of goods [has] a potential cause of action [for an implied warranty] only against his immediate seller." *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029 (Ill. 1988). In *Voelker*, the Seventh Circuit applied this principle in affirming dismissal of implied warranty claims against a car manufacturer when the plaintiff bought the car from a dealer. *See Voelker*, 353 F.3d at 526; *see also O'Connor v. Ford Motor Co.*, 2021 WL 4480743, at *12-13 (N.D. Ill. Sept. 30, 2021) (dismissing implied warranty claims

against a car manufacturer when the plaintiff bought the car from a dealer); *Kowalke v. Bernard Chevrolet, Inc.*, 2000 WL 656660, at *5 (N.D. Ill. Mar. 23, 2000) (same).[4]

There are exceptions to the privity requirement when a manufacturer makes specific promises to consumers through advertising or label information. *See In re Rust-Oleum Restore Mktg., Sales Practices. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016); *Szajna v. Gen. Motors Corp.*, 474 N.E.2d 397, 401 (Ill. App. Ct. 1st Dist. 1985) ("The exception dealt with by the court is limited to cases where a remote manufacturer knows the identity, purpose and requirements of the dealer's customer and manufactured or delivered goods specifically to meet those requirements."). Whether such privity exists can be a "fact intensive" inquiry as to whether the alleged representations match the alleged defect. *See Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 704 (N.D. Ill. 2016); *In re Rust-Oleum*, 155 F. Supp. 3d at 807 (citing cases).

Pickens, however, does not allege that Mercedes made any specific representations in advertising or otherwise regarding the glass in its cars' sunroofs. Indeed, Pickens does not remember at all what Mercedes promised in its advertising beyond a vague assertion of safety and quality. Beyond advertising and the fact that Mercedes manufactured his car, Pickens does not allege a relationship with Mercedes. Courts in this district have found that this kind of relationship between a

---

[4] This rule also applies to Pickens's claims under the Magnuson-Moss Act because "whether privity is a prerequisite to a claim for breach of implied warranty under the Magnuson–Moss Act therefore hinges entirely on the applicable state law." *Voelker*, 353 F.3d at 525.

car manufacturer and a car consumer is insufficient to allege an exception to the privity requirement. *See O'Connor v. Ford Motor Co.*, 2021 WL 4480743, at *12-13 (N.D. Ill. Sept. 30, 2021); *Allstate Ins. Co. v. Toyota Motor Mfg. N. Am., Inc.*, 2009 WL 3147315, at *2 (N.D. Ill. Sept. 28, 2009); *see also Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 946 (N.D. Ill. 2004). Accordingly, Pickens's implied warranty claims against Mercedes must be dismissed.

## III.    Fraud

All of Pickens's fraud-based claims require him to allege that Mercedes made a false statement to him or failed to disclose material information.[5] He argues that he satisfies this pleading requirement with the allegation that Mercedes's advertisements and the Napleton salesperson claimed that the car was "safe" and "top quality" and failed to disclose that the sunroof might shatter.

Similar to his warranty claims, Pickens's alleged statements about safety and quality are too vague to form the basis of any fraud claim. Claims about "quality" in the context of advertising or salesmanship are generally considered "puffery" that is not actionable. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910,926 (Ill. 2007) (finding "the following phrases as [non-actionable] puffery: 'high-quality,' 'expert workmanship,' 'custom quality,' 'perfect,' 'magnificent,' 'comfortable,' and 'picture perfect.'"). Claims about safety can be actionable as fraud if they are specific. *See*, *e.g.*, *Hanson-Suminski v. Rohrman Midwest Motors, Inc.*, 898 N.E.2d 194, 204 (Ill. App.

---

[5] *See Lidecker v. Kendall Coll.*, 314, 550 N.E.2d 1121, 1124 (Ill. App. Ct. 1st Dist. 1990) (fraudulent inducement); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008) (ICFA).

Ct. 1st Dist. 2008) (holding that statements about a car's accident history are not puffery). But as discussed, Pickens admits that he cannot remember any specifics about the advertisements, and he does not allege any specific statements by the Napleton salesperson. Such vague assertions of safety are just as unactionable as assertions of "high quality." *See Johnson v. FCA US LLC*, 2021 WL 3633595, at *13 (E.D. Mich. Aug. 17, 2021) ("Courts in this district have repeatedly held that the kind of broad, non-quantifiable statements about a vehicle's safety or reliability that Plaintiffs identify here are non-actionable puffery."); *Opheim v. Aktiengesellschaft*, 2021 WL 2621689, at *13 (D.N.J. June 25, 2021) ("Plaintiffs' more particular allegations that [the defendants] promoted the 'high quality,' 'reliability,' 'superior performance,' and 'safety' of their vehicles . . . constitute merely vague and ill-defined opinions or puffery[.]"); *Costa v. FCA US LLC*, 2021 WL 2338963, at *11 (D. Mass. June 8, 2021) ("general statements about big-picture concepts such as trust, security, reputation, and safety are non-actionable puffery"). A reasonable consumer would expect the salesperson to claim the product is safe and would not rely on such a general assertion when making a purchase. *See O'Connor v. Ford Motor Co.*, 2021 WL 4866353, at *25 (N.D. Ill. Oct. 19, 2021) ("If the statement at issue is obviously so vague as to lack any discernable meaning, then the plaintiff cannot plausibly show either that the statement is false or that she reasonably relied on it.").

A failure to disclose specific information impacting the safety of a car can serve to state a claim for fraud. *See In re Takata Airbag Prods. Liab. Litig.*, 462 F. Supp. 3d 1304, 1318 (S.D. Fla. 2020) ("Although the marketing of safety features may be

construed as 'puffery' when viewed in isolation, such marketing can 'cross the line from mere puffery to active misrepresentations' when statements about safety are read next to allegations that an automotive manufacturer had actual knowledge of the alleged safety defect." (citing cases)). Pickens claims that Mercedes's failure to disclose that the sunroof might shatter is a material omission that supports a fraud claim. But Pickens does not plausibly allege that Mercedes knew that the sunroof window in his particular car was likely to shatter. He points to the National Highway Traffic Safety Administration recall notice as evidence that Mercedes had this knowledge. But that notice does not address the shattering sunroof windows or the car model Pickens purchased, and in any case, it was issued after Pickens bought his car, and so is not evidence that Mercedes had such knowledge at the time of sale. Pickens also cites consumer complaints about shattering sunroofs. But none of these complaints concern the model of car Pickens purchased. And Pickens has made no allegations indicating that these complaints are indicative of a *design* defect in his car. Other district courts have rejected similar allegations for similar reasons. *See*, *e.g.*, *Elfaridi v. Mercedes-Benz USA, LLC*, 2018 WL 4071155, at *5 (E.D. Mo. Aug. 27, 2018) (33 consumer complaints, NHTSA investigation into, and recall by, other manufacturers insufficient to show MBUSA's knowledge of same alleged shattering sunroof defect); *David v. VW Grp. of Am.*, 2018 WL 19604447, at *7 (D.N.J. April 26, 2018) (allegations of consumer complaints and recalls regarding sunroof defect insufficient as they did not involve subject model and, in any event, occurred after car

purchase). Therefore, Pickens's allegations about Mercedes's advertisements and Napleton's statements are not sufficient to state a fraud claim.[6]

## IV.   Negligence

All of Pickens's negligence-based claims require him to allege that Mercedes had a duty to Pickens.[7] Pickens argues that he satisfies this requirement by alleging that Mercedes knew that the sunroof windows in its cars were likely to shatter.

As discussed, Pickens has not plausibly alleged that Mercedes had this knowledge. Furthermore, even if Mercedes had this knowledge, the Seventh Circuit has explained that a "duty to disclose would arise [only] if plaintiff and defendant are in a fiduciary or confidential relationship or in a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). Generally, a mere commercial transaction is insufficient to establish such a fiduciary relationship. *See id.* at 572 (citing cases). The Illinois Supreme Court has specifically held that a plaintiff who purchased a vehicle from an authorized dealer did not sufficiently allege that the manufacturer had a duty to disclose safety risks to

---

[6] For reasons discussed with regard to Pickens's warranty claims, any fraud claim based on Napleton's statements is also undermined by Pickens's failure to plausibly allege that Napleton is Mercedes's agent.

[7] *See Jones v. UPR Prod., Inc.*, 2015 WL 3463367, *5 (N.D. Ill. 2015); *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58-59 (Ill. 2016) (negligence and negligent infliction of emotional distress); *Fremont Fin. Corp. v. IPC/Levy, Inc.*, 994 F. Supp. 988, 990 (N.D. Ill. 1998) (citing *Board of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E. 2d 580, 591 (Ill. 1989)) (negligent misrepresentation). A "failure to inspect" claim is a form of negligence. *See* Restatement (Second) of Torts § 300, cmt. C at 77 (1965).

11

the plaintiff. *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996). Federal district courts have agreed. *See Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D. Ill. 2018) (finding that a routine relationship between a car manufacturer and car consumer does not establish a fiduciary relationship generating a duty to disclose); *Karpowicz v. Gen. Motors Corp.*, 1997 WL 413929, at *8 (N.D. Ill. July 18, 1997) (same). Therefore, Pickens has failed to state any claim sounding in negligence because he has not alleged that Mercedes had a fiduciary or other special relationship to him with respect to the car he bought.

Additionally, Pickens's claim for negligent infliction of emotional distress requires allegation of physical injury. *See Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002) ("Illinois follows the 'impact rule,' which allows a plaintiff to recover for [a negligent infliction of emotional distress] only if the distress is directly and causally related to a physical injury."). Pickens does not allege or seek relief for a physical injury to himself due to the shattering window. Therefore, that claim must be dismissed for that reason as well.

## V.    Intentional Infliction of Emotional Distress

"Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel Corp.*, 869 F.3d 557, 566 (7th Cir.

12

2017). To the extent Pickens has alleged extreme and outrageous conduct or emotional distress (and the Court doubts that he has), the distress was suffered by his sister who was driving the car at the time the glass shattered. Pickens's sister is not plaintiff in this case, and Pickens does not have standing to recover for his sister's alleged distress.

## VI. Illinois Uniform Deceptive Trade Practices Act

Under the Illinois Uniform Deceptive Trade Practices Act ("DTPA"), a "person likely to be damaged by a deceptive trade practice of another" may sue for injunctive relief. 815 ILCS 510/3. This statute is primarily designed to enable businesses to sue competitors who are gaining market share by deceiving consumers. *See Chabraja v. Avis Rent A Car Sys., Inc.*, 549 N.E.2d 872, 876 (Ill. App. Ct. 1st 1989) (the DPTA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute"). While consumers are also permitted to bring claims under the statute, the Seventh Circuit has explained that a consumer "who was aware of deceptive sales practices"—as evidenced by the fact that the consumer alleged the deceptive practices in a complaint—"was not 'likely' to be harmed by them in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014).

This is true of Pickens here. He alleges that Mercedes hid the potential for the sunroof window to shatter. But Pickens now clearly knows about this risk, so he is no longer "likely to be damaged" by this alleged practice and therefore cannot state a claim under the DTPA.

13

## VII.    Failure and Duty to Warn

"In the product liability context, a manufacturer has a duty to warn potential customers when 'the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning.'" *Johnson v. Edward Orton, Jr. Ceramic Found.*, 2021 WL 2633308, at *3 (N.D. Ill. June 25, 2021) (citing *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002)). As discussed, Pickens has not alleged that Mercedes knew of the risk that the sunroof window would shatter. Without such knowledge, Mercedes cannot have had a duty to warn Pickens about that risk.

## VIII.   Unjust Enrichment

The Seventh Circuit has explained that "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim [and the] unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir.2011). Mercedes's alleged failure to tell Pickens that his sunroof window might shatter underlies all his claims. Accordingly, his unjust enrichment claim must be dismissed because the Court has dismissed all his other claims.

14

## Conclusion

Therefore, Mercedes's motion to dismiss [49] is granted.[8] Pickens asked for leave to amend his complaint. Pickens has already amended his complaint twice, and his second amended complaint was filed in response to a brief Mercedes filed in opposition to the first amended complaint. Pickens has had sufficient opportunity to state and amend his claims, so his complaint is now dismissed with prejudice.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: November 1, 2021

---

[8] Because the Court has dismissed all of Pickens's claims, it is unnecessary to address Mercedes's arguments about defects in Pickens's class allegations.

15